### A03A1050. DUNN v. THE STATE.
(586 SE2d 352)

MIKELL, Judge.

An Athens-Clarke County jury found Morris Dunn guilty of two counts of aggravated assault[1] and one count of aggravated battery. In this appeal, Dunn maintains the trial court erred in (i) refusing to exclude his in-court identification by the victim, Aley Ealey, and (ii) refusing to grant a motion to suppress. He also argues insufficiency of the evidence. We affirm because these claims are without merit.

1. The evidence was sufficient to support Dunn's conviction. Viewed in a light most favorable to support the jury's verdict, the record shows that on May 20, 1997, Ealey was talking with friends outside his girlfriend's house. Ealey saw three men riding in a gray car with a vinyl top. The car drove down the street and turned around and came back. A man in the front seat of the car jumped out and shot Ealey in the neck. Ealey fell to the ground, paralyzed in his lower body. The man continued to fire after he ran past Ealey and then ran back to the car. The gunman and Ealey made eye contact before the gunman got into the car, which then sped off.

Antonio Lanier Thomas, who was at the scene, testified that he saw Morris Dunn in the front seat and Frederick Davenport in the back seat of a gray Buick; that he saw Davenport fire a weapon; and that "when I seen [Dunn] cocking the pistol, I heard a shot and that's when I ran." Thomas was connected to a 1996 police investigation of an incident in which Dunn had been shot. During that investigation, Dunn told an officer that "there's talk on the street that it was . . . Thomas" who shot him. Dunn also told the officer that if Dunn "knew that [Thomas] had shot him, that he'd be taking care of it himself."

---

[1] The two counts consisted of aggravated assault by assaulting Aley Ealey with intent to murder and aggravated assault by assaulting Ealey with a deadly weapon.

Edward Pope Scott, Jr., a co-defendant, testified that he drove Dunn and Davenport to Dunn's sister's house in the Pauldoe area of Athens. According to Scott, when they saw that Dunn's sister was not home they headed back out of the area. Scott pulled over to let traffic through a narrow area between parked cars. He then heard shots. Scott testified that Dunn and Davenport fired shots from the car. Scott further testified that Dunn and Davenport threw their guns out of the vehicle before it was stopped by the police.

Todd Hunt, an Athens-Clarke County police officer, was dispatched in response to the shooting. Another unit arrived at the scene and broadcast a description of the vehicle driven by the suspects and its direction of travel. Hunt was traveling westbound when he was passed by an eastbound vehicle with three occupants who matched the broadcast description. When Hunt turned around and activated his siren, the vehicle sped away from the officer, passing several vehicles left of the centerline. Hunt broadcast a call that he was chasing a vehicle which may have been involved in a drive-by shooting.

Officer Aubrey Epps heard Hunt's broadcast and blocked off an intersection to allow the chase to pass through. The suspect vehicle stopped before reaching the intersection, and Epps drove up beside it. Dunn, along with another occupant, tried to flee on foot, but were apprehended by Epps. Epps searched the scene and found a gun off the side of the road. He also saw spent shell casings in the rear of the vehicle, which evidence later showed to be fired from the discarded gun.

Hill Steed, an Athens-Clarke County police officer, visited Ealey about a week and a half after the shooting. Steed testified that Ealey, who was still in the hospital and on pain medication, identified Dunn from a photographic lineup as one of the persons in the vehicle but did not identify Dunn as the gunman who shot him.

Ealey traveled to Warm Springs for therapy for his paralysis and returned to Athens-Clarke County in October 1999. Later that fall, Ealey saw Dunn's picture in the newspaper, then called the police and gave them a statement that Dunn was the man who shot him. Ealey testified that his in-court identification of Dunn was based on his memory of what happened in 1997 and not based on seeing Dunn's picture in the newspaper in 1999.

Dunn argues that the only evidence that Dunn shot Ealey came from Ealey; none of the other witnesses actually saw Dunn shoot Ealey; and the prosecution was unable to tie any physical evidence from the shooting directly to Dunn. However, the evidence showed without question that the shooting occurred, that Dunn and Ealey were there, and that Dunn fired a weapon at the scene. The other witness accounts are not necessarily inconsistent with Ealey's testi-

mony. Although Thomas testified that Davenport got out of the car to shoot, and he did not see Dunn get out to shoot, Thomas ran from the gunfire and did not witness the entire event. Ealey was unable to run. He identified Dunn as the person who shot him, and the manner of the identification — that Dunn and Ealey had eye contact while Ealey lay paralyzed on the ground, is not impossible. "OCGA § 24-4-8 provides that 'the testimony of a single witness is generally sufficient to establish a fact.' Here the victim's testimony alone is sufficient to authorize the jury's verdict of guilty beyond a reasonable doubt."[2]

We conclude that the evidence was sufficient for a rational trier of fact to find Dunn guilty of the crimes for which he was convicted.[3]

2. Dunn claims the trial court erred in denying his motion to exclude Ealey's in-court identification. The issue is whether the pretrial identification of Dunn by Ealey impermissibly tainted the in-court identification.

> With regard to the in-court identification, whether a subsequent in-court identification is tainted depends on all the circumstances of the case. Conviction based on eyewitness identification at trial following a pretrial identification by photograph will be set aside only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.[4]

Dunn does not show that the original photographic lineup was impermissibly suggestive. Dunn argues that because Ealey failed to identify him as the shooter in the original photographic lineup, and because Ealey only identified Dunn as the gunman after seeing Dunn's picture in the paper, the suggestive pre-trial identification by Ealey impermissibly tainted the later in-court identification. This argument fails because Ealey was not shown the allegedly suggestive picture by law enforcement agents. Ealey saw the picture and contacted law enforcement officials on his own. Without government involvement, there was no violation of Dunn's due process rights and the issue becomes one of witness credibility.[5] A witness's pre-trial viewing of the defendant's picture in the newspaper does not make the in-court identification suppressible where the witness identifies

---

[2] (Citation and footnote omitted.) *Armstead v. State*, 255 Ga. App. 385, 386 (1) (565 SE2d 579) (2002).

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[4] (Citation and punctuation omitted.) *Baugher v. State*, 212 Ga. App. 7, 13-14 (3) (440 SE2d 768) (1994).

[5] See *Duck v. State*, 250 Ga. 592, 597 (3) (300 SE2d 121) (1983).

the defendant based on personal observation, which is the case here.[6] Accordingly, the trial court did not err in denying Dunn's motion to exclude Ealey's in-court identification.

3. Dunn claims the trial court erred by denying his motion to suppress in connection with the police stop of the car in which Dunn was a passenger. The record does not reflect that a motion to suppress was made before trial. During Hunt's testimony, a co-defendant's counsel asked the trial court to suppress further testimony by Hunt on the grounds that he unlawfully initiated a traffic stop. It does not appear Dunn adopted the objection, and so the objection does not inure to his advantage on appeal.[7] Even if Dunn had made or adopted the objection, it had no merit. Insofar as the objection can be considered a motion to suppress tangible evidence, it was improper because it was not made in writing as required by OCGA § 17-5-30 (b). It was also untimely.[8] Furthermore, Hunt had a reasonable suspicion that the occupants of the gray car had been involved in a shooting, and he was authorized to initiate an investigatory detention.[9] The trial court did not err in refusing to suppress Hunt's testimony or tangible evidence stemming from the stop.

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED AUGUST 4, 2003.

*Adrian L. Patrick*, for appellant.
*Kenneth W. Mauldin, District Attorney, Edward H. Brumby, Jr., Assistant District Attorney*, for appellee.

---

[6] Id. at 598 (3); *Blige v. State*, 205 Ga. App. 133, 135 (4) (421 SE2d 547) (1992).
[7] See *Towns v. State*, 197 Ga. App. 786, 787 (2) (399 SE2d 561) (1990).
[8] See *Tucker v. State*, 222 Ga. App. 517, 518 (2) (474 SE2d 696) (1996) (motion to suppress should be filed before trial).
[9] See *Smith v. State*, 165 Ga. App. 333, 334 (1) (299 SE2d 891) (1983).