## S08A0002. MORRIS v. THE STATE.

(662 SE2d 110)

MELTON, Justice.

Following a jury trial, Alfred Morris was convicted of felony murder and various other offenses in connection with the armed robbery and shooting death of Randy Sample during a failed drug deal.[1] Morris was also convicted of the aggravated assault of Torry Little, a man who was also involved in the drug deal. Morris contends

---

[1] On November 6, 2006, Morris was indicted for malice murder, three counts of felony murder (with aggravated assault, armed robbery, and conspiracy to violate the Georgia Controlled Substances Act as each of the three underlying offenses), aggravated assault, armed robbery, and conspiracy to violate the Georgia Controlled Substances Act in connection with the failed drug deal and shooting death of Randy Sample. Morris was also indicted for the aggravated assault and armed robbery of Torry Little, another participant in the drug deal. Following a November 6-13, 2006, jury trial, Morris was found guilty on all counts except for (1) malice murder and (2) the armed robbery of Little. On November 20, 2006, Morris was sentenced to life for felony murder (armed robbery), twenty years for the aggravated assault of Sample (to run concurrent with the felony murder sentence), twenty years for the aggravated assault of Little (to run consecutive to the sentences for the felony murder and aggravated assault of Sample), and ten years for conspiracy to violate the Georgia Controlled Substances Act (to run concurrent with the felony murder sentence and both aggravated assault sentences). The trial court merged the armed robbery charge with the felony murder charge for sentencing purposes. Morris filed a motion for new trial on December 19, 2006, which he amended on July 2, 2007. Morris also filed an "Extraordinary Motion for New Trial" on July 3, 2007. The trial court denied Morris' motion for new trial on July 5, 2007, and denied his extraordinary motion for new trial on August 9, 2007. Morris' timely appeal was docketed in this Court on September 4, 2007, and orally argued on January 8, 2008.

on appeal that the State improperly failed to disclose exculpatory evidence to the defense, and that his trial counsel was ineffective. We affirm.

1. Viewed in the light most favorable to the verdict, the record shows that Morris set up a purported drug deal in which Little and Sample were supposed to purchase $12,000 of high-grade marijuana from him. On March 25, 2006, Morris invited Sample and Little to an apartment in DeKalb County, and they all sat down in the kitchen of the apartment. Morris offered Sample and Little an opportunity to smoke some of the marijuana so that they could sample the quality of the drug that they were going to buy. Morris repeatedly requested that the money for the drugs be counted. Morris started to count the money with Sample, then Morris opened the door to the outside and three men with guns, among them co-defendants Michael Stevens and Shaheed Huff, entered the kitchen. Sample tried to run away when he saw the men with the guns, but Stevens shot him in the back. The bullet entered Sample's abdomen, which resulted in internal bleeding, but much of Sample's blood was contained within his body due to the nature of his wound. The armed men then stole the drug money and instructed Little to remove Sample from the apartment. Little and one of the armed men dragged Sample down the apartment steps and to Little's truck as Morris watched them from the apartment. Little attempted to drive Sample to a hospital, but could not find one. Little called 911 from a pay phone, and a police officer and an ambulance were sent to his location. A responding officer noticed that there was very little blood in Little's truck, considering the fact that Sample had recently been shot. Sample was rushed to the hospital, where he later died.

The evidence was sufficient to enable a rational trier of fact to find Morris guilty of all the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Morris contends that he was denied due process due to the State's failure to disclose certain exculpatory evidence to him. See *Brady v. Maryland*, 373 U. S. 83, 87 (83 SC 1194, 10 LE2d 215) (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."). Specifically, Morris argues that the State improperly failed to disclose chemical testing results that revealed that there was no blood on the apartment stairs where Sample was allegedly dragged after he had been shot. To prevail on his claim, Morris must show

(1) that the State possessed evidence favorable to the defense; (2) that [Morris] did not possess the evidence nor

could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

(Citation omitted.) *Zant v. Moon*, 264 Ga. 93, 100 (3) (440 SE2d 657) (1994).

Here, however, "[w]e need not decide whether [Morris] carried his burden to prove all the elements of a *Brady* violation, as we conclude that [Morris] has failed to carry his burden to prove the prejudice prong of his claim." (Footnote omitted.) *Ferguson v. State*, 280 Ga. 893, 894 (2) (635 SE2d 144) (2006). Again, to satisfy this prong, Morris had the burden of proving that "a reasonable probability exists that the outcome of the trial would have been different had the evidence been disclosed." (Citation omitted.) *Watkins v. State*, 276 Ga. 578, 583 (4) (581 SE2d 23) (2003). The record reveals that the State's medical examiner testified that due to the nature of Sample's gunshot wound, most of Sample's bleeding would have occurred internally, and much of Sample's blood would have been contained within his body after he had been shot. Consistent with this notion, the police detective testified that a chemical test conducted in the apartment kitchen where Sample had allegedly been shot revealed that there was no blood present in the kitchen. Further, the detective conceded during cross-examination that he did not know whether or not there was any blood on the stairs where Sample had allegedly been dragged after having been shot. The detective even observed that there was only a small amount of blood in Little's truck, considering that Sample "supposedly [had suffered] a gunshot wound" earlier that day. Thus, to the extent that Morris could even argue that the definitive chemical test revealing the lack of blood on the stairs constituted evidence favorable to him, the chemical test was nevertheless consistent with the evidence that the State had already presented to the jury. Accordingly, the undisclosed evidence was not outcome determinative, and the trial court correctly concluded that there was no *Brady* violation here. See, e.g., *Hester v. State*, 282 Ga. 239 (4) (647 SE2d 60) (2007).

3. Morris argues that his trial counsel was ineffective for failing to (a) present chemical testing evidence to show conclusively that there was no blood in the kitchen where Sample had allegedly been shot; (b) exercise reasonable diligence to obtain the State's undisclosed chemical test results with respect to the apartment stairs; and (c) object to hearsay that buttressed the credibility of Little, the State's key witness. In order to succeed on a claim of ineffective assistance, Morris must prove both that his trial counsel's perfor-

mance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); *Fuller v. State*, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, " '[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

With respect to presenting chemical testing evidence and pursuing the State's undisclosed chemical test results, as shown in Division 1, supra, counsel's failure to present or pursue such evidence did not affect the outcome at trial. Morris' allegations of ineffective assistance in connection with these issues are therefore without merit. See *Fuller*, supra, 277 Ga. at 507 (3). With regard to counsel's failure to object to certain hearsay testimony, the record reveals that one of the detectives testified at trial that Morris' girlfriend, who did not testify at trial, identified Stevens as one of the men who entered the apartment kitchen with a gun. While this testimony was hearsay, it was only cumulative of Little's own admissible testimony describing Stevens as one of the men with guns. Therefore, evidence supports the trial court's conclusion that counsel's failure to object to this testimony did not affect the outcome at trial and did not amount to ineffective assistance. *Culmer v. State*, 282 Ga. 330 (3) (647 SE2d 30) (2007).

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 19, 2008 —
RECONSIDERATION DENIED JUNE 30, 2008.

*Gerard B. Kleinrock*, for appellant.

*Gwendolyn Keyes Fleming, District Attorney, Barbara B. Conroy, Assistant District Attorney, Thurbert E. Baker, Attorney General, Benjamin H. Pierman, Assistant Attorney General*, for appellee.