A09A2158. IN THE INTEREST OF D. S., a child.
(691 SE2d 897)

BARNES, Judge.

D. S. was adjudicated delinquent for aggravated sodomy, kidnapping, and two counts of aggravated assault and was sentenced to five years in restrictive custody. On appeal he contends the evidence was insufficient to prove he committed the act of kidnapping. He also contends that trial counsel was ineffective. Upon our review, we affirm.

> In considering a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, we construe the evidence and every inference from the evidence in favor of the juvenile court's adjudication to determine if a reasonable finder of fact could have found, beyond a reasonable doubt, that the juvenile committed the acts charged. Thus, the standard of review on appeal in a case of adjudication of delinquency of a juvenile is the same as that for any criminal case. In reviewing such cases, we do not weigh the evidence or determine witness credibility.

(Citation and footnote omitted.) *In the Interest of J. L. H.*, 289 Ga. App. 30 (656 SE2d 160) (2007).

So viewed, the evidence shows that the 25-year-old victim was walking home from the bus stop when a young man approached and attempted to talk to her. She ignored him and kept walking until he pulled out a gun and asked her for her money. When she said that she did not have any money, he forced her at gunpoint to continue walking and led her to an abandoned house. He took the victim behind the house and, holding the gun to her head, ordered her to get on her knees and perform oral sodomy on him. He held the gun to her head, and hit her with it at one point during the assault and told her to "do it right."

After the assault, the young man ordered the victim to lie on the ground and count to ten. He told her that he would kill her if she told anyone. When he left, the victim ran down the street until she was picked up by a friend and taken to the friend's apartment. The victim's mother arrived shortly thereafter and called police. Police responded and investigated the scene of the assault, and also took a statement from the victim, but were not able to locate the suspect. The victim described her assailant as wearing a white t-shirt, blue jean shorts and having short twists in his hair.

The victim testified that over the next few days she described her attacker to others in the neighborhood, and that about five days after the attack a friend called her because he saw someone who

looked like the attacker at a Shell service station about one block from where the attack occurred. When the victim and her mother drove to the station, the person was gone, but as they drove down the street she saw her assailant and immediately pointed him out to her mother. She testified that she was "one hundred percent" sure it was him when she saw him, and the victim also positively identified D. S. at the hearing as the person who attacked her. When D. S. saw her, he "took off running" and they could not follow him.

That same day, however, based on information from a friend, the victim located D. S.'s apartment, called police, and identified him as the person who assaulted her earlier in the week. D. S. was arrested, and after obtaining a search warrant, police recovered a black, metal BB gun that police initially believed was a real handgun from under a mattress in D. S.'s bedroom.

1. D. S. only challenges the sufficiency of the evidence related to the kidnapping adjudication. He contends that the movement during the incident was not sufficient to satisfy the asportation element. He argues that the movement was not a separate act but was part of the criminal course of conduct encompassing the act of aggravated assault. We do not agree.

"A person commits the offense of kidnapping when such person abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will." OCGA § 16-5-40 (a). The State must prove as an essential element that the defendant has "stolen away" or "abducted" his alleged victim, and it must show that an unlawful movement, or asportation, of the person has taken place against his will. *Gibson v. State*, 233 Ga. App. 838, 841 (4) (a) (505 SE2d 63) (1998). Our Supreme Court's recently adopted standard for determining the sufficiency of evidence of asportation provides for the assessment of four factors:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense. [Cit.]

(Footnote omitted.) *Garza v. State*, 284 Ga. 696, 702 (1) (670 SE2d 73) (2008).[1] The factors provide assistance

---

[1] The Georgia legislature amended the kidnapping statute; however, the statute applies to crimes committed on or after the revised statute's effective date, July 1, 2009. OCGA § 1-3-4. The crimes in this case occurred on August 13, 2007, and therefore the standard set forth in *Garza* applies.

in determining whether the movement in question is in the nature of the evil the kidnapping statute was originally intended to address — i.e., movement serving to substantially isolate the victim from protection or rescue — or merely a "criminologically insignificant circumstance" attendant to some other crime.

Id.

Clearly, here the element of asportation was shown. After the victim told D. S. that she did not have any money, D. S. forced her to continue walking to an isolated yard behind an abandoned house where the sodomy occurred. Contrary to D. S.'s argument otherwise, this action was not a necessary or inherent part of aggravated sodomy, and created additional dangers to the victim by isolating her, reducing her chance of rescue, and enhancing D. S.'s control over her. *Garza v. State*, 284 Ga. at 702 (1). Under these circumstances, the evidence of asportation and the remaining elements of kidnapping were sufficient to support D. S.'s delinquency adjudication for kidnapping.

2. D. S. also contends that his trial counsel provided ineffective assistance by failing to call an expert on eyewitness testimony.

In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)[.] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003).

Normally, claims for ineffective assistance of counsel raised for the first time on appeal are remanded to the trial court for an evidentiary hearing. *Smith v. State*, 255 Ga. 654, 656 (3) (341 SE2d 5) (1986). But "[w]hen the record is sufficient, . . . an appellate court may decide ineffectiveness issues without remanding the case when the remand would waste judicial and legal resources and serve no useful purpose." (Citation and punctuation omitted.) *Hendrix v. State*, 268 Ga. App. 455, 457 (2) (602 SE2d 133) (2004). In this case

we believe that a remand would serve no useful purpose as the record before us is sufficient to decide D. S.'s ineffectiveness claim.

> To establish the prejudicial effect of trial counsel's failure to present certain evidence, an appellant "is required to make an affirmative showing that specifically demonstrates how counsel's failure would have affected the outcome of the case." (Citation and punctuation omitted.) *Ware v. State*, 273 Ga. 16, 17 (3) (537 SE2d 657) (2000).

*Cupe v. State*, 253 Ga. App. 851, 856 (3) (e) (560 SE2d 700) (2002). Here, while D. S. contends that trial counsel was ineffective for failing to bring in an expert to testify as to the impact of trauma on a person's ability to remember details,

> [a] court need not consider whether there was a substantial likelihood of misidentification if it finds that the identification procedure was not impermissibly suggestive. An identification procedure becomes impermissibly suggestive when it leads the witness to an all but inevitable identification of the defendant as the perpetrator, or is the equivalent of the authorities telling the witness, "This is our suspect."

(Citations omitted.) *Pace v. State*, 272 Ga. App. 16, 18 (3) (611 SE2d 694) (2005).

In this case, the victim pointed D. S. out without any undue suggestion from an outside source. Despite the fact that a friend told her the suspect was at a service station, the victim was quite clear that she did not see the man who attacked her at the station. She did not identify D. S. until she saw him walking down a nearby street. Under these circumstances, D. S. has failed to demonstrate a reasonable probability that the testimony of an expert as to misidentification evidence would have changed the outcome of his case. See *In the Interest of T. K. L.*, 277 Ga. App. 461, 462-463 (5) (627 SE2d 98) (2006).

*Judgment affirmed. Miller, C. J., and Andrews, P. J., concur.*

DECIDED MARCH 17, 2010.

*Jan A. Wheeler, Jimmonique R. S. Rodgers*, for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Stephen J. Pearsall,*

YALE LAW LIBRARY

*Elisabeth G. MacNamara, Assistant District Attorneys*, for appellee.