## A10A0803. WALKER v. THE STATE.
### (699 SE2d 902)

POPE, Senior Appellate Judge.

Harry Walker was convicted of two counts of armed robbery, four counts of kidnapping, and four counts of possession of a firearm during the commission of a crime. On appeal, Walker challenges the sufficiency of the evidence and contends that his due process rights were violated because the state failed to produce discoverable evidence associated with another robbery suspect investigated by the police. He further contends that the trial court improperly denied his motions for funds to hire an expert on eyewitness identification and for a mistrial; gave erroneous jury charges on eyewitness identification and witness credibility; and erred by not granting him leave to file an out-of-time motion for new trial. For the following reasons, we affirm.

1. Walker contends that there was insufficient evidence to

---

[23] *Hood v. State*, 292 Ga. App. 584, 585 (1) (666 SE2d 674) (2008).

608

convict him of the charged offenses.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [s]tate's case, we must uphold the jury's verdict.

(Citations and punctuation omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004). With these principles in mind, we turn to the facts of this case, which centered on the robbery of two separate finance companies in March 2000 by a single gunman later identified as Walker, who initially posed as a loan applicant.

*The Bibb Finance Robbery.* Around lunchtime on March 1, 2000, two female employees were working in the front office of the Bibb Finance Company. No other employees or customers were in the office at that time. Walker then came into the office, crossed the room to face one of the employees at the front counter, and asked to complete a loan application. The employee began taking down Walker's credit information and entering it into her computer. Walker gave a fictitious name and stated that he worked as a roofer for a company called L. E. Schwartz, that his landlord was H. D. Meadows, and that he paid $465 in rent.

After the loan application was completed, the employee handed Walker her business card and asked him to call or come back in an hour to see if his application had been approved. At that point, Walker came around the front counter, pulled out a handgun, and ordered the two employees "to get to the back of the office." Brandishing the handgun, Walker followed the two employees as they proceeded to the back area of the office where there was a break room and bathroom.

Once in the break room, Walker pulled out a roll of duct tape and ordered the first employee to bind the wrists of the second employee. After the second employee was bound, Walker took the tape and bound the wrists of the first employee. Walker then moved the two employees into the back bathroom, warned them not to try to escape from the bathroom for twenty minutes or he would hurt them, and closed the bathroom door.

Walker returned to the front office and began taking money and

personal checks out of the drawers. Around that time, a female customer entered the office and saw Walker, who told her to come back in about 20 minutes because he was "cleaning up." The customer left, and Walker fled from the office. After Walker was gone, the two employees were able to free themselves from the duct tape, escape from the bathroom, and dial 911. The police responded to the scene but were unable to identify or apprehend a suspect at that time. The cash and checks stolen from the office were never recovered.

*The Macon Finance Robbery.* A strikingly similar robbery occurred at the Macon Finance Company during the morning hours of March 13, 2000. As in the prior robbery, two female employees were alone in the front office when Walker entered and asked to complete a loan application. One of the employees began taking down Walker's credit information. Walker gave the same fictitious name, employer, and amount of rent as with the Bibb Finance application. Walker further stated that he was employed as a "roofer helper" and identified his landlord as H. D. Hard.

Once again, after the loan application was completed, Walker came over the front counter, pulled out a handgun, and ordered the two employees "to get straight to the back room." The employees complied, and after their wrists were bound with duct tape, Walker forced them to get down on the floor in a back closet. Walker warned them not to try to escape from the closet for 20 minutes or he would kill them.

Walker returned to the front office and began taking any cash that he could find in the desks. At that point, a manager from a neighboring business came into Macon Finance and saw Walker as he was pulling money out of a desk and placing it in a plastic bag. Walker pointed his handgun toward the manager, who turned around and ran from the office. The manager ran back to his business and had one of his own employees dial 911.

Walker fled from the office and was able to escape without police detection. After Walker escaped, another person entered the office, discovered the two employees in the back closet, and released them. As with the Bibb Finance robbery, the cash stolen from the office was never recovered.

*The Investigation.* County detectives assigned to the case began investigating the fictitious loan applications completed by Walker. One of the detectives was able to locate a landlord by the name of H. D. Meadows, who identified Walker as the tenant who had rented property from him for $465. Additionally, Walker had formerly been employed on a commercial roofing crew at L. E. Schwartz & Son. Walker also was of the same race and general weight as identified by the witnesses to the two robberies. The social security number

provided on the Macon Finance loan application, moreover, was the same as Walker's social security number, but with the order of some of the numbers slightly altered.

The detectives applied for and obtained an arrest warrant for Walker and a search warrant for his residence. In the residence, the police found a handgun that matched the description given by the witnesses to the two robberies, clothing that matched the description given by the witnesses to the Macon Finance robbery, and a sticky note that had the name H. D. Meadows written on it next to the figure $465.17. Walker was arrested that same day.

Once Walker was in police custody, the detectives placed him in a lineup with other inmates. The two Bibb Finance employees, the customer who walked into Bibb Finance during the robbery, the two Macon Finance employees, and the manager who walked into Macon Finance during the robbery separately viewed the lineup. Each of the six eyewitnesses identified Walker from the lineup as the perpetrator. Walker subsequently was indicted, tried, and convicted by a jury of multiple counts of armed robbery, kidnapping, and possession of a firearm during the commission of a crime.

(a) Walker maintains that the state failed to prove beyond a reasonable doubt that he was the perpetrator of the alleged offenses. We disagree.

In order to establish armed robbery, the state must prove that the defendant, "with intent to commit theft, [took the] property of another from the person or the immediate presence of another by use of an offensive weapon." OCGA § 16-8-41 (a). To prove kidnapping, the state must demonstrate that the defendant abducted or stole away another person without lawful authority or warrant and held such person against his or her will. OCGA § 16-5-40 (a). Finally, to prove possession of a firearm during the commission of a crime, the state must show that the defendant had "on or within arm's reach of his or her person a firearm ... during the commission of ... [a]ny crime against or involving the person of another." OCGA § 16-11-106 (b) (1).

At trial, the two Bibb Finance employees, the customer who walked into Bibb Finance during the robbery, the two Macon Finance employees, and the manager who walked into Macon Finance during the robbery testified to the events as set out above and identified Walker in court as the perpetrator of the respective robberies. Furthermore, the state presented evidence that these six eyewitnesses previously identified Walker in the lineup as the perpetrator. This evidence, standing alone, was sufficient to support Walker's convictions. See OCGA § 24-4-8 ("The testimony of a single witness is generally sufficient to establish a fact."); *Dunn v. State*, 262 Ga. App. 643, 645 (1) (586 SE2d 352) (2003) ("[T]he victim's testimony alone is sufficient to authorize the jury's verdict of guilty beyond a

reasonable doubt.") (punctuation and footnote omitted).

The state also presented circumstantial evidence of Walker's guilt. In this respect, the state introduced into evidence the fictitious loan applications associated with the two robberies, and testimony from the landlord H. D. Meadows, a human resources director at L. E. Schwartz & Son, and the county detectives linking Walker to information contained in those applications. Additionally, the state introduced into evidence the handgun, clothing items, and sticky note seized during the search of Walker's residence.

This combined direct and circumstantial evidence was more than sufficient to authorize a rational jury to find Walker guilty beyond a reasonable doubt of the charged offenses. *Jackson*, 443 U. S. 307. See OCGA §§ 16-5-40 (a); 16-8-41 (a); 16-11-106 (b) (1); *Hill v. State*, 298 Ga. App. 677, 678 (1) (680 SE2d 702) (2009); *Range v. State*, 289 Ga. App. 727, 729 (2) (658 SE2d 245) (2008); *Byrd v. State*, 236 Ga. App. 485, 485-486 (1) (512 SE2d 372) (1999). While Walker points to certain conflicts in the witnesses' identifications, it was the role of the jury, not this Court, to resolve conflicts in the testimony and assess the credibility of the witnesses. See *Byrd*, 236 Ga. App. at 486 (1).

(b) Walker argues that his kidnapping convictions cannot stand because the movement of the Bibb Finance employees and the Macon Finance employees during the course of the armed robberies was not sufficient to satisfy the element of asportation. Again, we disagree.

Kidnapping requires proof of an unlawful movement, or asportation, of the victim against his or her will. *In the Interest of D. S.*, 302 Ga. App. 873, 874 (1) (691 SE2d 897) (2010). See OCGA § 16-5-40 (a). In *Garza v. State*, 284 Ga. 696, 702 (1) (670 SE2d 73) (2008), our Supreme Court adopted a new standard for determining the sufficiency of the evidence as to the required element of asportation. The standard entails the consideration of four factors:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

Id.[1] The Supreme Court noted that consideration of these factors

---

[1] In 2009, the legislature amended OCGA § 16-5-40 to provide that slight movement is sufficient evidence of asportation, as long as the movement is not incidental to another offense. OCGA § 16-5-40 (b) (1) (2009); Ga. L. 2009, p. 331, § 1. The amendment also defines the circumstances under which the movement is not merely incidental to another offense. See OCGA § 16-5-40 (b) (2) (2009); Ga. L. 2009, p. 331, § 1. However, the amendment only applies

would aid

> in determining whether the movement in question is in the nature of the evil the kidnapping statute was originally intended to address — i.e., movement serving to substantially isolate the victim from protection or rescue — or merely a criminologically insignificant circumstance attendant to some other crime.

(Citation and punctuation omitted.) Id. Not all of the four factors must favor the state in order to prove asportation. See *Abernathy v. State*, 299 Ga. App. 897, 900 (1) (685 SE2d 734) (2009).

The element of asportation was established in this case. In both armed robberies, Walker forced the employees at gunpoint into a back area of the office; bound or forced another to bind each of them with duct tape; shut them into a confined space where they could not be seen from the front office; and threatened them with bodily harm if they tried to escape before 20 minutes elapsed. These actions were not a necessary or inherent part of the robberies. Rather, these actions created additional danger to the employees by isolating them and reducing their chances of rescue, enhanced Walker's control over them, and enabled Walker to avoid apprehension and to effect his escape from the scene. Under these circumstances, the movement at issue was not simply a "criminologically insignificant circumstance attendant to [the armed robberies]," but was "in the nature of the evil the kidnapping statute was originally intended to address." (Citation and punctuation omitted.) *Garza*, 284 Ga. at 702 (1). Accordingly, the evidence of asportation was sufficient to sustain Walker's convictions. See *Henderson v. State*, 285 Ga. 240, 244-245 (5) (675 SE2d 28) (2009); *In the Interest of D. S.*, 302 Ga. App. at 874 (1); *Verdree v. State*, 299 Ga. App. 673, 681-682 (5) (a) (683 SE2d 632) (2009); *Brower v. State*, 298 Ga. App. 699, 707 (2) (680 SE2d 859) (2009); *Flores v. State*, 298 Ga. App. 574, 576-577 (1) (680 SE2d 609) (2009).[2]

(c) Walker further asserts that two of his convictions for possession of a firearm during the commission of a crime must be merged with his other two convictions for possession of a firearm during the

---

to crimes committed on or after the amended statute's effective date of July 1, 2009, and, therefore, is not applicable in the present case. See *Wilkinson v. State*, 298 Ga. App. 190, 195 (1) (d), n. 2 (679 SE2d 766) (2009).

[2] This is not a case where the defendant simply moved the victim back and forth while searching for money or other items. Compare *Crawford v. State*, 297 Ga. App. 187, 190 (1) (b) (676 SE2d 843) (2009); *Rayshad v. State*, 295 Ga. App. 29, 34 (1) (b) (670 SE2d 849) (2008). In that scenario, the defendant is not moving the victim for the purpose of isolating him from protection or rescue.

commission of a crime. We are unpersuaded.

Our Supreme Court has held that "where multiple crimes are committed together during the course of one continuous crime spree, a defendant may be convicted once for possession of a firearm during the commission of a crime as to every individual victim of the crime spree." *State v. Marlowe*, 277 Ga. 383, 386 (2) (c) (589 SE2d 69) (2003). Even if we were to treat the Bibb Finance and Macon Finance robberies as one crime spree, there were four individual victims in this case — the two Bibb Finance employees and the two Macon Finance employees. Consequently, Walker's four separate convictions on the firearm possession charges were proper. See *Davis v. State*, 279 Ga. 11, 13 (4) (608 SE2d 628) (2005).

2. Walker contends that he was denied due process because the state failed to produce discoverable evidence of a photographic lineup that included a photo of the initial robbery suspect. We discern no reversible error.

At trial, the county detectives testified that Walker was not the initial robbery suspect. They testified that during the course of their investigation, a photographic lineup of six individuals was compiled that included a photo of the initial robbery suspect. The detectives testified that the photographic lineup, which did not include a photo of Walker, was then shown to the two Bibb Finance employees, the customer who walked into Bibb Finance during the robbery, the two Macon Finance employees, and the manager who walked into Macon Finance during the robbery. Five of the witnesses did not identify anyone in the lineup as the perpetrator, but the manager who had walked into Macon Finance during the robbery pointed to the initial robbery suspect and said that "he looks like the guy." The detectives testified, however, that the investigation later changed course and Walker became the prime suspect, after which a physical lineup was conducted in which all six witnesses, including the manager, identified Walker as the perpetrator. All six witnesses also identified Walker in court as the perpetrator.

The state did not produce the six photos that made up the photographic lineup, and Walker maintains that the failure to produce them violated *Brady v. Maryland*, 373 U. S. 83, 87 (83 SC 1194, 10 LE2d 215) (1963). But to prevail on his *Brady* claim, Walker must show that "had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different." (Citation and punctuation omitted.) *Morris v. State*, 284 Ga. 1, 3 (2) (662 SE2d 110) (2008). He has failed to make such a showing in this case.

Evidence of the photographic lineup and of the manager's identification of the initial robbery suspect was presented to the jury for their consideration through the testimony of the detectives.

Hence, even if the photos were improperly withheld by the state, the same exculpatory evidence was before the jury for it to consider and weigh as part of its deliberations. As such, Walker suffered no cognizable prejudice and has failed to establish a basis for reversal. See *Morris*, 284 Ga. at 3 (2); *Ferguson v. State*, 280 Ga. 893, 894-895 (2) (635 SE2d 144) (2006); *Jones v. State*, 276 Ga. App. 728, 730-731 (624 SE2d 275) (2005).

3. Walker next argues that his due process rights were violated because the state failed to produce a loan application filled out by the initial robbery suspect. We do not agree.

At trial, there was testimony that during the course of the investigation, detectives learned that the initial robbery suspect had previously filled out a loan application at Macon Finance. An unidentified individual from the police department picked up the loan application from the finance company, but the detective who was supposed to receive the application testified that he was never informed that the application had been picked up, never saw or received the application, and did not know what had happened to the application. Macon Finance could not locate any other copies of the loan application.

In the court below, Walker conceded that the initial robbery suspect's loan application had been lost and argued that the state's failure to preserve the application violated his right to due process. Walker emphasized that the initial robbery suspect's loan application had potentially exculpatory value because the signature and information in the application could have been compared to the fictitious loan applications completed in this case.

> The [s]tate's failure to preserve evidence discovered in the course of a criminal investigation can, in limited circumstances, violate a criminal defendant's right to due process. In dealing with the failure of the state to preserve evidence which might have exonerated the defendant, a court must determine both whether the evidence was material and whether the police acted in bad faith in failing to preserve the evidence. *Arizona v. Youngblood*, 488 U. S. 51 (109 SC 333, 102 LE2d 281) (1988).

(Citations omitted.) *Krause v. State*, 286 Ga. 745, 752 (8) (691 SE2d 211) (2010). See also *Sharp v. State*, 286 Ga. 799, 802 (3) (692 SE2d 325) (2010). "Unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." (Punctuation and footnote omitted.) *Jones v. State*, 258 Ga. App. 283, 284 (574 SE2d 359) (2002).

Irrespective of the materiality question, Walker has failed to show that the state acted in bad faith in losing the loan application. He has not alleged that the application was lost due to any intentional action on the part of the state, and we can find no evidence in the record that the state attempted to deny Walker access to the application knowing that it would be exculpatory. The acts of obtaining and then losing the loan application, standing alone, are insufficient to establish bad faith. See *State v. Brawner*, 297 Ga. App. 817, 820-821 (678 SE2d 503) (2009). This is particularly true in the present case, where there is no evidence that the unidentified person from the police department who picked up the loan application was involved in the investigation of the robberies or was otherwise aware of the potential relevance of the application. Furthermore, even if the state's loss of the loan application indicated "careless, shoddy and unprofessional investigatory procedures," such procedures in and of themselves did not reflect a bad faith effort to prevent Walker from obtaining exculpatory evidence. *Walker v. State*, 264 Ga. 676, 681 (3) (449 SE2d 845) (1994). See also *Davis v. State*, 285 Ga. 343, 349 (9) (676 SE2d 215) (2009). Walker's due process rights, therefore, were not violated. See *Sharp*, 286 Ga. at 802-803 (3); *Krause*, 286 Ga. at 752-753 (8); *Jones*, 258 Ga. App. at 284.

4. Walker maintains that the trial court improperly denied his motion for funds to hire an expert on eyewitness identification. The record, however, does not contain a copy of the transcript of the hearing on the motion or the trial court's denial of the motion. Moreover, it appears from the trial court's comments during a hearing on an unrelated motion that Walker made a proffer of evidence at the hearing on the motion for funds to hire an expert. Given this incomplete record, we cannot ascertain what evidence was before the trial court when it denied the motion, and, therefore, must affirm the trial court's ruling. See *Stephens v. State*, 224 Ga. App. 184, 185 (1) (480 SE2d 235) (1997).

5. Walker also contends that the trial court improperly denied his motion for a mistrial based upon certain testimony by a county detective concerning a composite drawing made of the perpetrator. But Walker failed to preserve this issue for appeal by not renewing his motion for a mistrial after the trial court gave curative instructions in response to the testimony. See *Fincher v. State*, 276 Ga. 480, 482 (3) (578 SE2d 102) (2003); *Kim v. State*, 298 Ga. App. 402, 403 (1), n. 8 (680 SE2d 469) (2009); *Anderson v. State*, 236 Ga. App. 679, 685 (7) (513 SE2d 235) (1999).

6. Walker argues that the trial court committed reversible error by charging the jury that in assessing the reliability of an eyewitness identification, it could consider the level of certainty shown by the witness in his or her identification. See *Brodes v. State*, 279 Ga. 435,

435-443 (614 SE2d 766) (2005). Significantly, however,

> [t]he record reflects appellant requested the trial court give the charge he now asserts to be erroneous. The act of requesting an instruction in the trial court constitutes a specific waiver of the right to enumerate it as error on appeal. Because [Walker] induced the giving of the charge below, he is precluded from attacking it now.

(Citations and punctuation omitted.) *Inman v. State*, 281 Ga. 67, 69 (2) (635 SE2d 125) (2006).

7. Walker maintains that the trial court committed reversible error by instructing the jury that it could consider a witness's intelligence in determining his or her credibility. We disagree.

The record reflects that Walker did not object to any portion of the jury charge and did not reserve his right to object to the charge. Hence, based on the law in effect at the time of trial,[3] Walker waived any objection to the jury charge except to the extent that he can show "a substantial error in the charge which was harmful as a matter of law." OCGA § 5-5-24 (c). See *Loadholt v. State*, 286 Ga. 402, 404-405 (3) (687 SE2d 824) (2010). To demonstrate substantial error, Walker must show that "the allegedly erroneous charge was blatantly apparent and prejudicial to the extent that it raises a question whether he has been deprived, to some extent, of a fair trial." (Citation and punctuation omitted.) *Luker v. State*, 291 Ga. App. 434, 436 (2) (662 SE2d 240) (2008). Walker has failed to make such a showing in this case. See *McKenzie v. State*, 293 Ga. App. 350, 352 (2) (667 SE2d 142) (2008) (holding that the same charge concerning a witness's intelligence is confusing and should not be given, but concluding that it was not "so harmful as to require a reversal"). Hence, any challenge to the jury charge has been waived for purposes of appellate review. See *Loadholt*, 286 Ga. at 405 (3).

8. In his final enumeration of error, Walker argues that the trial court erred by not granting him leave to file an out-of-time motion for new trial. In support of his enumeration, Walker relies on the identical arguments raised in his prior enumerations of error. Accordingly, Walker has failed to show error by the trial court for the reasons set forth in Divisions 1-7.

---

[3] OCGA § 17-8-58 (a), effective July 1, 2007, now mandates that a defendant "inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate." Failure to comply with subsection (a) "preclude[s] appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties." OCGA § 17-8-58 (b).

*Judgment affirmed. Barnes, P. J., and Senior Appellate Judge G. Alan Blackburn concur.*

DECIDED AUGUST 19, 2010.

*Robert M. Bearden, Jr.*, for appellant.
*Howard Z. Simms, District Attorney*, for appellee.