S11A1296. YOUNG v. THE STATE.

(721 SE2d 839)

THOMPSON, Justice.

Appellant Kareem K. Young was convicted of felony murder and other offenses in connection with the death of Arkeem Lavan Young.[1]

---

[1] The crimes occurred on July 20, 2005. Via indictment, appellant was charged with malice murder, two counts of felony murder (one predicated on aggravated assault, the other on theft by receiving stolen property), possession of a firearm during the commission of a felony, theft by receiving stolen property (the murder weapon), tampering with evidence, and making false statements. Trial commenced on January 28, 2008, and concluded on February 4. The jury found appellant not guilty of malice murder, and guilty on the remaining counts. The trial court sentenced appellant to life in prison on the felony murder count predicated on aggravated assault, and a consecutive term of five years on the possession of a firearm count. The other felony murder count was vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369 (434 SE2d 479) (1993). The trial court sentenced appellant to terms of imprisonment on the remaining counts which are to be served concurrently with the life sentence for felony

He appeals, asserting, inter alia, the prosecution withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). Finding no error, we affirm.

1. Viewing the evidence in a light to uphold the verdict, we find the following: Appellant and a cousin, Arkeem Young, were standing in the driveway of their home around midnight. Arkeem was using a cell phone when appellant shot him in the head, picked up the cell phone, and dialed 911. Officer Nollinger was just six houses away when the 911 call was made and he arrived quickly at the scene. Arkeem was lying on the ground with one leg folded underneath him. His eyes were wide open, but he was dead.

Appellant told police his name was "Hakeem" — and he spelled it. He said he was standing with his cousin in the driveway; that they turned to walk toward the house; that a shot rang out as a black truck rode past the house; and that he ran and hid behind a garbage can. Officer Nollinger did not see a truck in the neighborhood. Appellant's next-door neighbor heard the shot, but he did not hear the sound of a passing truck.

Police searched the scene and found a shell casing near the victim. The location of the shell casing, along with blood splatter evidence, demonstrated that the shot had not been fired from the street. That finding was consistent with evidence showing that appellant had gunpowder residue on his hands.

Initially, police were unable to find a weapon at the house. Two days later, however, they recovered a handgun from under the house. The gun was stolen. A ballistics test demonstrated that it was used to kill Arkeem; it also showed that it was used to kill an armed robbery victim at a convenience store seven months earlier. Appellant was a suspect in the convenience store shooting. He told police who investigated that shooting that he was at the convenience store and he was carrying a shotgun, but that he did not shoot the victim.

The evidence was sufficient to enable any rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 318-319 (99 SC 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009).

2. Appellant contends the State violated *Brady* because it failed to disclose a 19-page management report detailing the findings of a private consulting company hired by the Mayor of Garden City to

---

murder. Appellant's timely filed motion for new trial was denied on January 24, 2011, and appellant filed a notice of appeal on February 1. The case was docketed in the September term of this Court and orally argued on September 12, 2011.

investigate the operations of the Garden City Police Department.[2] In this regard, appellant claims the report shows that the lead investigator, Steve Stratman, who found the murder weapon and testified at trial, had a reputation for falsifying reports and lying under oath. Continuing the argument, appellant posits that the report could have been used to impeach Stratman about his recovery of the murder weapon.

To prevail on a *Brady* claim, appellant must demonstrate that the prosecution wilfully or inadvertently suppressed evidence favorable to the accused, either because it is exculpatory or impeaching. *Brady v. Maryland*, 373 U. S. at 87. However, "the Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense." *Kyles v. Whitley*, 514 U. S. 419, 436-437 (115 SC 1555, 131 LE2d 490) (1995). *Brady* comes into play only when the suppressed evidence is material, i.e., "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U. S. 667, 682 (105 SC 3375, 87 LE2d 481) (1985).

The management report at issue here is not material — it is neither exculpatory nor impeaching. The report never identifies any cases by name, and never names any of the interviewees. It contains no specific information from identifiable sources which appellant could present to a jury. Simply put, the report does not raise a reasonable probability that, had it been disclosed, the outcome of the trial would have been different. *United States v. Bagley*, supra. Because the report was hearsay and inadmissible, and appellant has not shown how its disclosure would have led to admissible evidence, it did not constitute *Brady* material. See *Wood v. Bartholomew*, 516 U. S. 1 (116 SC 7, 133 LE2d 1) (1995).

3. Appellant asserts the State also violated *Brady* because it refused to identify a witness who placed appellant at the scene of the convenience store shooting. This assertion is without merit. Appellant was aware pretrial that the State had taken statements from the witness, a six-year-old child. The trial court reviewed the witness' statement in camera, and ruled that it was not at all exculpatory. We have also reviewed the witness' statement in camera and find no error in the trial court's ruling.

4. The trial court did not err in admitting evidence of the 2004 convenience store homicide as a similar transaction. This Court held

---

[2] Appellant received the report pursuant to an open records request made after trial.

on interlocutory appeal that such evidence would be admissible if there was a sufficient connection between the gun, each of the two crimes, and appellant. *Young v. State*, 281 Ga. 750 (642 SE2d 806) (2007). The prosecution satisfied these requirements. It demonstrated that appellant was at the scene of each crime; that the handgun used to kill the victim in the convenience store robbery was used to kill Arkeem; that appellant stored the handgun at his house; and that he retrieved it the day Arkeem was murdered.

5. Officer Nollinger, who was the first to arrive at the scene, subsequently joined a police force in South Carolina where he was indicted for official misconduct and his South Carolina POST certification was revoked. At the time of trial, Nollinger was facing a disciplinary hearing in Georgia to determine if his Georgia POST certification should have been revoked also. Appellant contends that, inasmuch as Nollinger may have felt pressured to testify favorably for the State in order to gain concessions from the South Carolina prosecutor or keep his Georgia POST certification, the trial court should have permitted him to cross-examine Nollinger about any possible bias. We disagree.

> The Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. Accordingly, trial courts retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.

(Citations, punctuation and emphasis omitted.) *Watkins v. State*, 276 Ga. 578, 582 (581 SE2d 23) (2003).

In denying defendant's motion to explore Nollinger's bias, the trial court informed appellant it would revisit the issue if appellant were to present evidence other than the pending criminal charge against Nollinger. However, appellant failed to demonstrate that Nollinger's testimony was influenced in any way by the charge pending against him in South Carolina. In fact, the South Carolina prosecutor testified that Nollinger did not seek any concessions for his cooperation and that she had no interest whatsoever in Nollinger's trial testimony. Moreover, Nollinger's testimony was consistent with his police report, the dashboard videotape he made at the scene, and the testimony of other officers. Thus, it would be highly speculative to suggest a connection between Nollinger's testimony and the troubles stemming from the South Carolina

prosecution, and it cannot be said that the trial court abused its discretion in limiting appellant's cross-examination of Nollinger. Compare *Watkins v. State*, supra, 276 Ga. at 580 (3) with *Sapp v. State*, 263 Ga. App. 122 (587 SE2d 267) (2003).

6. The trial court did not abuse its discretion in denying a jury view. *Sutton v. State*, 237 Ga. 418, 419 (3) (228 SE2d 815) (1976). The evidence introduced at trial, including video, diagrams and photographs, enabled the jury to comprehend fully the scene of the crime and the issues pertaining thereto. A view would have provided "fertile ground for irregularity" and no real benefit. See *Esposito v. State*, 273 Ga. 183, 187 (4) (538 SE2d 55) (2000).

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 9, 2012 —
RECONSIDERATION DENIED FEBRUARY 6, 2012.

*Jennifer R. Burns*, for appellant.

*Spencer Lawton, Jr., District Attorney, Ann M. Elmore, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.