306 Ga. 567
FINAL COPY

S19A0715.  FOREMAN v. THE STATE.

BLACKWELL, Justice.

Jamal Nevin Foreman was tried by a Floyd County jury and convicted of murder and other crimes in connection with the fatal shooting of Wreno Dantoine Fain. Foreman appeals, contending that the evidence is legally insufficient to sustain his convictions, that he was denied due process when the State suppressed exculpatory evidence, and that he was denied the effective assistance of counsel when his lawyer failed to adequately investigate and present evidence to support an alternative theory of the crime. Finding no reversible error, we affirm.[1]

---

[1] Fain was killed on July 20, 2014. In October 2014, a Floyd County grand jury indicted Foreman, charging him with murder with malice aforethought, murder in the commission of a felony (aggravated assault and aggravated battery), aggravated assault, aggravated battery, reckless conduct, unlawfully discharging a firearm near a public highway, unlawfully discharging a firearm on the property of another, and possession of a firearm during the commission of a felony. Foreman was tried in February 2017, and the jury found him guilty on all counts. The trial court sentenced Foreman to imprisonment for life without the possibility of parole for malice murder,

1. Viewed in the light most favorable to the verdict, the evidence presented at trial shows that Fain and Christopher Robinson were friends. A little after midnight on July 20, 2014, Robinson drove Fain to a nightclub in Rome known as the "Lexus Lounge." Robinson parked his Jeep in a parking lot adjacent to the club, and Fain entered the club while Robinson waited in his vehicle. A few minutes later, Robinson heard three gunshots, and soon thereafter, Fain appeared on the passenger side of the Jeep. Fain opened the door, said he had been shot, and asked Robinson to take him to a hospital. As Robinson tried to help Fain into the vehicle, he saw Foreman approaching with a gun in his hand. Foreman aimed the gun at Robinson and pulled the trigger, but the gun either misfired or jammed. Foreman then ducked in front of the Jeep, came around the side, and fired several shots at Fain, who dropped to the

concurrent terms of imprisonment for 12 months for reckless conduct and the two unlawful discharge crimes, and a consecutive term of imprisonment for five years for the firearm possession offense. The other counts merged or were vacated by operation of law. Foreman timely filed a motion for new trial, which he amended in August 2018. After a hearing, the trial court denied the motion for new trial in November 2018. Foreman timely filed a notice of appeal, and his case was docketed for the April 2019 term of this Court and submitted for a decision on the briefs.

ground and soon became unresponsive. Robinson did not see who fired the three shots that he overheard before Fain returned to the Jeep, but he identified Foreman at trial as the person who shot at Fain as he was trying to enter the vehicle. Another witness also saw Foreman shoot Fain as he tried to climb into the Jeep. Fain died as a result of the gunshot wounds that he sustained.

Foreman's girlfriend was present at the scene of the shooting. At the time, she had a friendly but not romantic relationship with Fain, who had fathered two of her children. She initially told investigators that she too saw Foreman chasing Fain with a gun, and she added that she saw "two dudes" running at the time of the shooting, one toward the club and another toward the Jeep. At trial, however, she denied seeing Foreman with a gun. Nevertheless, she testified that Foreman was at the club at the time of the shooting, and she said that, after she spoke with Fain, Foreman asked her if Fain had gotten "smart" with her. Soon after this exchange, she testified, she saw Fain walking toward a car, and Foreman "had went the other way," when she heard two rounds of gunshots and

then saw Fain on the ground, bleeding. She added that Foreman and Fain had argued two or three weeks before the shooting.

When law enforcement officers responded to the scene of the shooting, they spoke with bystanders about persons of interest, and only Foreman's name came up. Investigators found his residence and knocked on the door. A woman answered and directed the officers to Foreman, who was sleeping in a common area on a makeshift bed. Another man, Travis Matthews, was also inside the residence, and because he "looked a lot like" Foreman, investigators detained him briefly to verify his identity. According to Foreman's girlfriend, Matthews was not at the club on the night of the shooting.

After Foreman was arrested, officers seized several items from the area in which he had been sleeping, including his driver's license and a pair of shoes that appeared to have blood on them. DNA obtained from the blood on the shoes matched that of Fain. Investigators interviewed Foreman after giving him Miranda[2]

---

[2] Miranda v. Arizona, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

warnings. He initially denied being involved in the shooting, but he later admitted that he shot Fain (though Foreman's explanation of his motive is unclear). Foreman told the investigators that he threw the gun away after the shooting, though he was not sure exactly where. A recording of this interview was played for the jury at trial. Foreman also agreed to take investigators to the area where he disposed of the gun, and he rode with several officers to that location. Although the gun was never found, one of the officers who was in the police car with Foreman testified that, without being prompted, Foreman said something like, "I didn't mean to do what I did or hurt him as bad as I did."

Foreman argues that the evidence is legally insufficient to sustain his convictions because there was no showing of "malice aforethought" — the intent to kill — and the prosecution presented inconsistent evidence and witnesses who were not credible. His argument, however, ignores the overwhelming evidence of his guilt, including his own confession and the testimony by two eyewitnesses identifying him as the person who shot Fain. To the extent that some

of the evidence was inconsistent and the credibility of some witnesses was in doubt, "it is the role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient." Graham v. State, 301 Ga. 675, 677 (1) (804 SE2d 113) (2017) (citation and punctuation omitted). And the evidence permitted the jury to infer that Foreman shot Fain with malice aforethought. See Jackson v. State, 267 Ga. 130, 130 (1) (475 SE2d 637) (1996). We conclude that the evidence presented at trial was more than sufficient to authorize the jury to find beyond a reasonable doubt that Foreman was guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Foreman contends that he was denied due process because the prosecution suppressed exculpatory evidence in violation of Brady v. Maryland, 373 U. S. 83, 87 (83 SCt 1194, 10 LE2d 215) (1963). This contention is without merit. One item of evidence about which Foreman complains — a statement that Robinson made to

6

investigators — was not suppressed; it was disclosed to the defense before trial, and in fact, Foreman's lawyer cross-examined Robinson about it. See Young v. State, 290 Ga. 441, 443 (2) (721 SE2d 839) (2012) (Brady claim requires proof that "the prosecution wilfully or inadvertently suppressed evidence favorable to the accused"). And Foreman has failed to show that the other evidence about which he complains — a statement by another person who did not testify at trial, a photograph of Matthews, photographs of blood spatter in the Jeep, and evidence of a shell casing at the scene — was favorable to the defense or material. See id. (Brady claim requires proof that suppressed evidence was not only favorable to the accused, but also that it was "material," meaning that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."). See also Upton v. Parks, 284 Ga. 254, 256 (1) (664 SE2d 196) (2008) (defendant fails to prove Brady claim where exculpatory value of suppressed evidence is "purely speculative"); Morris v. State, 284 Ga. 1, 3 (2) (662 SE2d 110) (2008) (no Brady violation where suppressed

7

evidence was "consistent with the evidence that the State had already presented to the jury").

3. Lastly, Foreman contends that he was denied the effective assistance of counsel when his lawyer failed to adequately investigate and present evidence that Matthews was involved in the shooting. To obtain relief on a claim of ineffective assistance of counsel, a defendant generally must show both that his lawyer's performance was deficient and that this deficient performance prejudiced the defense. Strickland v. Washington, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). An attorney performs deficiently under Strickland if he does so in an "objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." Thomas v. State, 303 Ga. 700, 702 (2) (814 SE2d 692) (2018) (citation and punctuation omitted). Prejudice is shown by demonstrating "a reasonable probability sufficient to undermine confidence in the outcome that, but for counsel's alleged unprofessional errors, the result of the proceeding

would have been different." Miller v. State, 285 Ga. 285, 286 (676 SE2d 173) (2009) (citation and punctuation omitted).

Foreman has failed to prove deficient performance or prejudice. The only particular deficiencies that he alleges are that his lawyer failed to call Matthews as a witness and failed to put a photograph of Matthews into evidence. But Foreman did not call Matthews to testify at the hearing on his motion for new trial, and he did not otherwise show what Matthews would have said if he had, in fact, been called as a witness at trial. Likewise, Foreman did not put any photographs of Matthews into the record in connection with his motion for new trial. As a result, we have no idea whether Matthews's testimony or a photograph would have been helpful in any way to the defense at trial.[3] And without knowing these things, we cannot say that trial counsel was deficient when he failed to

---

[3] To the extent that some evidence suggests that Matthews participated in the shooting — in Robinson's statement to investigators, see Division 2 supra, Robinson said that Matthews shot Fain near the entrance of the club and that Foreman then "finished him off" in the parking lot — it suggests only that Matthews and Foreman jointly killed Fain. Evidence that Matthews was an accomplice to Foreman would not have been especially helpful to Foreman. We find no evidence in the record to suggest that Matthews killed Fain alone and without the complicity of Foreman.

develop and present this evidence to the jury, nor can we say that Foreman was prejudiced by that failure. See <u>Jones v. State</u>, 289 Ga. 111, 114 (2) (a) (709 SE2d 773) (2011) (mere speculation about the contents of a document did not support a finding of deficient performance or prejudice). Foreman has not proved his claim of ineffective assistance.

<u>Judgment affirmed. All the Justices concur</u>.

DECIDED AUGUST 19, 2019.
Murder. Floyd Superior Court. Before Judge Sparks.
*Cooper, Barton & Cooper, Ashley A. Cooper, Michael D. Cooper*, for appellant.

10

*Leigh E. Patterson, District Attorney, John F. McClellan, Jr., Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General*, for appellee.