## A05A0860. In re LONG.
(623 SE2d 181)

BARNES, Judge.

Talmadge Long refused to testify when called as a witness in a DeKalb County criminal case, despite purported grants of immunity, citing his constitutional right not to incriminate himself. The trial court found him in contempt, and Long appeals, contending that the immunity grant did not comply with OCGA § 24-9-28, and that the evidence presented was insufficient to find him in criminal contempt beyond a reasonable doubt. For the reasons that follow, we reverse the trial court's order finding Long in criminal contempt.

Our state constitution provides that "[n]o person shall be compelled to give testimony tending in any manner to be self-incriminating," Ga. Const. of 1983, Art. I, Sec. I, Par. XVI, a right also guaranteed by the Fifth Amendment to our federal constitution. "The privilege reflects a complex of our fundamental values and aspirations, and marks an important advance in the development of our liberty." (Footnote omitted.) *Kastigar v. United States*, 406 U. S. 441, 444 (92 SC 1653, 32 LE2d 212) (1972). At the same time, statutes granting immunity from prosecution in exchange for self-incriminating testimony "seek a rational accommodation between the imperatives of the privilege and the legitimate demands of government to compel citizens to testify," because "many offenses are of such a character that the only persons capable of giving useful testimony are those implicated in the crime." Id. at 446.

OCGA § 24-9-28 is such an immunity statute. Subsection (a) provides that,

> Whenever in the judgment of the Attorney General or any district attorney the testimony of any person or the production of evidence of any kind by any person in any criminal proceeding before a court or grand jury is necessary to the public interest, the Attorney General or the district attorney may request the superior court in writing to order that person to testify or produce the evidence. Upon order of the court that person shall not be excused on the basis of his privilege against self-incrimination from testifying or producing any evidence required; but no testimony or other evidence required under the order or any information directly or indirectly derived from such testimony or evidence may be used against the person in any proceedings or prosecution for a crime or offense concerning which he testified or produced evidence under court order. However, he may nevertheless be prosecuted or subjected to penalty or

forfeiture for any perjury, false swearing, or contempt committed in testifying or failing to testify, or in producing or failing to produce evidence in accordance with the order but shall not be required to produce evidence that can be used in any other courts, including federal courts. Any order entered under this Code section shall be entered of record in the minutes of the court so as to afford a permanent record thereof; and any testimony given by a person pursuant to such order shall be transcribed and filed for permanent record in the office of the clerk of the court.

OCGA § 24-9-28 (b) provides that a person who refuses to testify after being granted immunity and being ordered to testify may be held in contempt and committed to the county jail until he testifies.

The immunity granted under this statute is for "use and derivative use" of the immunized witness's testimony, but is not "transactional" immunity. In other words, the State may not use the witness's testimony or any evidence derived from the witness's testimony to prosecute him, but the immunity under this statute does not mean immunity from prosecution altogether. The U. S. Supreme Court in *Kastigar*, supra, explained that the statutory immunity had to be as broad as the protection granted by the Fifth Amendment, but not broader.

Transactional immunity, which accords full immunity from prosecution for the offense to which the compelled testimony relates, affords the witness considerably broader protection than does the Fifth Amendment privilege. The privilege has never been construed to mean that one who invokes it cannot subsequently be prosecuted. Its sole concern is to afford protection against being forced to give testimony leading to the infliction of penalties affixed to criminal acts. Immunity from the use of compelled testimony, as well as evidence derived directly and indirectly therefrom, affords this protection.

(Citation and punctuation omitted.) *Kastigar*, supra, 406 U. S. at 453. Our state statute, which mirrors the federal statute, thus prohibits the State from using compelled testimony or evidence derived from that testimony given under an immunity grant, but would allow the State to prosecute the witness using evidence gathered elsewhere.

This case is unusual, because it involves a witness who was ordered to testify pursuant to a grant of immunity approved by courts in counties other than the one in which he was called to testify, and those grants were procured by the State acting ex parte. Defendant

Richard Jones was on trial in the State Court of DeKalb County for possession and transfer of gambling devices in violation of OCGA § 16-12-24. During the investigation that led to Jones's arrest and prosecution, appellant Long was arrested in Clayton County and charged with possession of gambling devices, possession of a firearm by a convicted felon, and violations of the Georgia Controlled Substances Act. Long was also charged in Fayette County with controlled substance violations and illegal firearms possession. Further investigation by Clayton and DeKalb Counties led to the discovery of gambling machines in DeKalb and to Jones's arrest and prosecution.

Jones's first trial ended in a mistrial during the first witness's testimony, and his second trial resulted in his conviction of misdemeanor possession and transfer of gambling machines. During the State's opening statement in the first trial, Jones objected to the prosecutor discussing any statements Long made to investigators, or anything else about Long's anticipated testimony because Jones anticipated Long would not testify. In response, the State offered a document signed by a Clayton County assistant district attorney offering Long use and derivative use immunity for his testimony. Long's attorney, who was present at Jones's trial, objected on the ground that immunity could not be granted by the State acting alone, but had to be granted by a superior court judge, and stated for the record that, while he had been negotiating with Clayton County about Long's charges, the prosecutor there declined to put anything in writing to be approved by a judge. The trial court ruled that, "if the state wanted to refer to testimony of Talmadge Long, it would come under use immunity and derivative use immunity type of application. If the state wanted to refer to that in opening statement, then it should have been taken care of by now." The court then directed the State to refrain from referring to Long's statements in its opening statement.

The next day, the State presented a new document, again signed by a Clayton County assistant district attorney offering Long use and derivative use immunity for his testimony, but this time also signed by a Clayton County Superior Court judge. Long objected to the ex parte document on due process grounds, arguing that the statute requires that such a request for immunity be made to the court in writing, served upon opposing counsel, and heard by a judge who would then determine whether Long's testimony was a public necessity. In this case, the first time Long saw the document signed by the Clayton County judge was that morning at trial. The State responded that the trial court in Jones's case had the authority to grant Long immunity for his testimony, that the DeKalb County solicitor's office had offered Long use immunity in writing, and that the Clayton County immunity grant was valid. After considering whether the ex

parte Clayton County immunity grant was valid despite the lack of a hearing, the trial court held that the grant was valid, that Long was an available witness, and that he was expected to testify. The trial court declared a mistrial, however, before Long was called to testify.

On the third day of the second trial, the State again presented the Clayton County document and also presented to the trial court a faxed copy of a document signed by a Fayette County assistant district attorney and a superior court judge that granted Long use and derivative use immunity for his testimony at Jones's trial. Long objected, stating that he had never seen the document before, and that it and the Clayton County immunity grant had been procured by the State ex parte, in violation of OCGA § 24-9-28. Long again stated that he had been negotiating with Clayton County regarding the charges pending against him there, but that the State had declined to put anything in writing regarding use immunity, only saying that it would "run it past my judge and see if the judge will accept it." The trial court held that the Clayton County immunity grant was valid, and that Long had had an opportunity to challenge it after the earlier mistrial but had not done so.

The State called Long to the witness stand. When he declined to testify, the trial court instructed him "that Clayton County Superior Court has granted you full, unconditional use — derivative use of immunity for your testimony to be given in this case; and, therefore, you are not entitled to claim the Fifth Amendment as to testifying in this case. I will instruct you to answer the question." Long again declined to testify, upon which the trial court sent the jury out, held Long in civil contempt, and directed that he be held in custody until the trial ended. After the trial ended, the trial court conducted a hearing and found that Long had attended court, had been cooperative with court personnel, and had not acted in an offensive manner. The court nonetheless found Long in criminal contempt for failing to obey the court's direct order and sentenced him to serve 14 days and pay a $500 fine.

On appeal, Long contends that the Clayton County grant of immunity did not comply with OCGA § 24-9-28, and the trial court erred in finding him in criminal contempt based on the invalid immunity grant. We note that the State has declined to participate in this appeal, having chosen not to respond to Long's enumerations of error.

On appeal from a conviction of criminal contempt, we review the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Barlow v. State*, 237 Ga. App. 152, 157 (3) (513 SE2d 273) (1999). "Criminal contempt is that which involves some disrespectful or contumacious conduct

toward the court. Contempt of court has been variously defined; in its broad sense it means disregard for or disobedience of the order or command of the court." (Citation and punctuation omitted.) Id. It is " 'a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both.' *Bloom v. Illinois*, 391 U. S. 194, 201 (88 SC 1477, 20 LE2d 522) (1968)." *Garland v. State*, 253 Ga. 789, 790 (1) (325 SE2d 131) (1985). Every court has the power "to preserve and enforce order in its immediate presence and, as near thereto as is necessary, to prevent interruption, disturbance, or hindrance to its proceedings." OCGA § 15-1-3 (1). "Disobedience to the lawful order of a court is an obstruction of justice, and for such a violation the court, in order to compel respect or compliance, may punish for contempt." *Griggers v. Bryant*, 239 Ga. 244, 246 (1) (236 SE2d 599) (1977).

The facts in this case are unlike those in *In the Interest of S. U.*, 269 Ga. App. 306, 307-308 (1) (603 SE2d 790) (2004) and in *Lee v. State*, 191 Ga. App. 882, 884 (2) (383 SE2d 366) (1989). In both of those cases, the trial court granted the witness immunity and ordered him to testify; when he refused, the court held him in criminal contempt, and we affirmed. In this case, however, the trial court held that the immunity grant from another jurisdiction was valid, and ordered the witness to testify. The immunity grants from Clayton and Fayette Counties, however, did not meet the statutory requirements outlined in OCGA § 24-9-28, which directs the State to file a written request with the court. The court must then determine whether the witness's testimony was necessary to the public interest. *King v. State*, 273 Ga. 258, 264-265 (15) (539 SE2d 783) (2000); *Mosher v. State*, 265 Ga. 666, 667 (461 SE2d 219) (1995).

Long further argues that the ex parte nature of the Clayton and Fayette Counties' immunity grants violated OCGA § 24-9-28, because he was entitled to a hearing. While the statute itself does not specify that the witness is entitled to a hearing, in denying a defendant's claim that he was entitled to be present during the OCGA § 24-9-28 hearing with the witness, the Supreme Court of Georgia noted that such a hearing was held with the witness present, *King v. State*, supra, 273 Ga. at 264, as this court did in *Wilson v. State*, 211 Ga. App. 791, 792-793 (2) (440 SE2d 534) (1994). After noting that the statute did not require an *evidentiary* hearing, we held recently that a witness had sufficient prior notice of the State's motion for testimonial immunity and presented sufficient arguments at a bench conference to uphold the witness's conviction of criminal contempt for refusing to testify after being granted immunity. *In the Interest of S. U.*, supra, 269 Ga. App. at 307-308 (1).

If Long had testified, then "the Fifth Amendment itself would have prohibited the use or derivative use of applicant's testimony had

[he] testified (regardless of the validity of the immunity grant)." *Corson v. Hames*, 239 Ga. 534, 536 (4) (238 SE2d 75) (1977). And "the compelled evidence or any other evidence derived from the compelled evidence could not be used against appellant in proceedings in any other forum." *Brooks v. State*, 238 Ga. 435, 436 (233 SE2d 208) (1977). But those facts are "irrelevant to the issue of whether the state may lawfully compel [his] testimony. The state must grant a valid immunity under state law as broad in scope as the privilege it replaces, and demonstrate the applicability of that state immunity to the witness, before ordering [him] to testify." *Corson v. Hames*, supra, 239 Ga. at 536 (4) (contempt conviction reversed because immunity grant improperly conditioned on the witness giving "full," "complete," and "truthful" testimony).

Because the trial court in this case relied on another court's ex parte immunity grant in ordering Long to testify, and neither court made a finding that Long's testimony was "necessary to the public interest," we must reverse Long's conviction for criminal contempt.

*Judgment reversed. Ruffin, C. J., and Johnson, P. J., concur.*

DECIDED NOVEMBER 9, 2005.

*Karlyn Skall*, for appellant.