**FIRST DIVISION
PHIPPS, C. J.,
ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**November 14, 2013**

# In the Court of Appeals of Georgia

A13A1000. DELEON-ALVAREZ v. THE STATE.

A13A1001. PALACIOS-BARAS v. THE STATE.

A13A1002. HERNANDEZ v. THE STATE.

PHIPPS, Chief Judge.

At a joint trial in Gwinnett County Superior Court, Jonathan Deleon-Alvarez, Francisco Palacios-Baras, Tito Hernandez and a fourth co-defendant (who is not an appellant in the instant cases) were found guilty by the jury of kidnapping for ransom[1] Jose Wilson Tejada on October 11, 2009. The trial court entered judgments of conviction upon the verdicts. Deleon-Alvarez's, Palacios-Baras's, and Hernandez's

---

[1] OCGA §§ 16-5-40 (concerning kidnapping); 16-2-20 (concerning parties to a crime). The indictment alleged that each of the four co-defendants had committed kidnapping for ransom in Gwinnett County on or about October 11, 2009, in that said accused "did then and there unlawfully abduct Jose Wilson Tejada . . . and hold said person against his will for ransom." The jury was instructed on parties to a crime.

respective motions for new trial were denied. Discerning no reversible error, we affirm their convictions.

Evidence adduced at trial showed that in early 2009, the Atlanta High Intensity Drug Trafficking Area (HIDTA) task force began a drug trafficking investigation. As part of that investigation, the Gwinnett County District Attorney obtained warrants from the Gwinnett County Superior Court to authorize the interception of calls to and from three targeted cellphone numbers being used by Palacios-Baras. While thereafter monitoring those conversations, officers discerned from statements overheard on October 11, 2009 that someone (later determined to be Tejada) had been kidnapped due to an $84,000 drug debt. Based on ping data relating to one of the monitored cellphones, officers concluded that the abducted individual was being held at a particular Floyd County residence.[2]

That evening, several law enforcement officers set up surveillance of the Floyd County residence, which by then had been determined by police to be that of Palacios-Baras. Starting at about 10:45 p.m., officers observed individuals exiting the house and leaving in several vehicles – a white Ford Expedition, a tan Toyota Camry,

---

[2] The state adduced evidence that the location of a telephone handset equipped with global positioning system (GPS) can be determined, oftentimes within a radius of three meters.

and a white GMC Yukon Denali – that had been parked at the residence. Concerned that one of the vehicles was carrying a hostage, officers pursued the departing vehicles and quickly effected traffic stops upon two of them.

Having stopped the Expedition, police extracted its three occupants: (i) Tejada, who was seated in the back seat and who immediately exclaimed that his life had been threatened; (ii) Deleon-Alvarez, who was seated in the back seat beside Tejada; and (iii) the driver, the fourth co-defendant (who is not an appellant). When the Camry was stopped, Hernandez, the driver, was the vehicle's lone occupant.

That night, officers lost sight of the Denali, and also were unable to locate Palacios-Baras. Based on ping data obtained in connection with one of the targeted cellphones that Palacios-Baras was still carrying, however, officers located him the next day. He was a passenger in a vehicle traveling in tandem with the Denali observed at his residence the night before. During a traffic stop of both vehicles, Palacios-Baras was arrested.

The state presented numerous witnesses who testified about Tejada's abduction, confinement, and rescue, as well as the arrests of the three appellants.[3] The proprietor of a business located in the strip mall where Tejada operated a clothing

---

[3] None of the co-defendants testified or called any witness.

3

store testified that, on the afternoon of October 11, 2009, two men approached Tejada in the parking lot. Each man grabbed one of Tejada's arms "like he was being arrested." This witness had no further recollection, other than: "They took him."

Tejada took the stand and gave these details. Between 2:00 and 4:00 p.m. on October 11, two men, with handguns drawn, confronted him as he was exiting his clothing store located in Gwinnett County. They told him to get into a black SUV parked in the parking lot, and he complied. Blindfolded, he was driven for about ten minutes to a house, later determined to be located also in Gwinnett County. The blindfold was removed.

Four or five men were already at that house, including the four co-defendants. Deleon-Alvarez and Hernandez used duct tape to bind Tejada's hands and legs, and told Tejada that they needed to solve something. Palacios-Baras and the fourth co-defendant were "leaning around, waiting until [Tejada] got bonded with the tape." About a half-hour after Tejada was brought to that house, he was lifted and placed in a tan Toyota Camry that was parked in the garage. Hernandez and Deleon-Alvarez also got into the Camry, and Tejada was again blindfolded. While Hernandez drove the Camry away, Deleon-Alvarez pressed what felt to Tejada like the tip of a handgun

4

against Tejada's back. After leaving that house, Tejada did not see again the two men who had nabbed him from the parking lot.

After about two hours of riding, they arrived at another residence, determined later to be located in Floyd County. Tejada was pulled out of the Camry and taken into the house. When the blindfold was removed, Tejada was in a room with all four co-defendants, each of whom held a firearm. Tejada testified that Palacios-Baras "came up to me, telling me that the drugs were stolen and that he was there to clean up the mess." As Tejada summarized at trial, "They told me that a [drug deal] had gone wrong and that that was the reason why they had kidnapped me."

Tejada elaborated at trial that, a few days before he was abducted, he had set up a drug deal between two of his store patrons, as a seller and a buyer. The deal involved three kilograms of cocaine. For brokering that deal, Tejada was to be paid $500. But, as Tejada testified, "[T]he drugs had been ripped off."

Thus, Tejada recalled at trial that when he was in that room with the four armed co-defendants and Palacios-Baras said to him that he (Palacios-Baras) was there to "clean up," Tejada discerned that they would "basically make sure that either I pay up, or they were going to kill me." According to Tejada, "They thought I stole the drugs," and they demanded from him $84,000, which Tejada explained at trial "was

5

the total amount that was owed for the drugs that was stolen." Tejada recalled that it was Palacios-Baras who "approached me, telling me that I needed to pay up over some drugs that got knocked off from them. And that they didn't care who knocked them up, they just wanted the money." Because Palacios-Baras continually pressed him about what he planned to do about "the situation," Tejada used a phone he was handed to call his wife and then his father-in-law, seeking help to procure the demanded sum.

Shortly thereafter, Tejada testified, one of numerous cellphones at the house rang and, when answered, he overheard the caller warning them to leave the house. Palacios-Baras and Hernandez left the residence first. Deleon-Alvarez and the fourth co-defendant stayed in the house with Tejada and removed the duct tape from Tejada's hands and legs to enable him to move more quickly. The two threatened to kill Tejada if he made any suspicious movement. They forced Tejada into the back seat of a white Ford Expedition; Deleon-Alvarez sat beside him, aiming a gun at him; and the fourth co-defendant drove the Expedition away.

Soon remarking that cops were following them, the driver increased his speed to outrun the police and tossed a handgun out the window. The patrol car activated its blue lights and siren, pursued the speeding Expedition, then engaged in a

6

maneuver that forced the Expedition to stop. Deleon-Alvarez stashed his gun in the back seat. Additional law enforcement officers converged upon the scene, and the three occupants were extracted from the Expedition and handcuffed. Tejada testified that he told police at the scene that he had been kidnapped from Gwinnett County earlier that day.

According to one of the arresting officers, Tejada also "uttered out something like, they were going to kill me." The officer saw "grayish-whiteish" glue around Tejada's wrists. During a search of the Expedition, police found a gun in the glove box and a gun secreted in the back seat. Police found also a gun alongside the road traveled during their pursuit of the Expedition.

Meanwhile, other law enforcement officers effected a stop of the Camry. Hernandez was the driver and only occupant. Officers confiscated $7,100 in cash from his person. A search of the vehicle yielded a loaded "magazine from a handgun," found near the front passenger seat.

At about 11:20 that same night, other law enforcement officers executed a warrant that had been obtained to search the Floyd County residence. Inside the house, they found, inter alia, "bunched up" duct tape in a trash can, digital scales of

7

a type often used to measure drugs, a pistol, gun holsters, and a bulletproof vest. The next day, police located and arrested Palacios-Baras.

The state also presented the jury with a series of transcripts of (recorded) phone conversations conducted with Palacios-Baras's targeted cellphones; many of the calls were made on the day in question, October 11, 2009. In one such call, at about 6:00 p.m., Tejada was heard in the background, pleading, "[D]on't kill me." And in a subsequent call, Tejada asked his wife to call her father and ask him for $84,000.

*Case No. A13A1000 - Appeal of Deleon-Alvarez*

1. "The proper and timely filing of the notice of appeal is an *absolute requirement* to confer jurisdiction upon the appellate court."[4] "It is the duty of this court to raise the question of its jurisdiction in all cases in which there may be any doubt as to the existence of such jurisdiction."[5] In this criminal case, Deleon-Alvarez's

> motion for new trial was filed before the judgment was entered, making it void. However, the effect of the subsequent entry of a judgment on the jury's verdict is to render the otherwise void motion one which was only

---

[4] *Veasley v. State*, 272 Ga. 837, 838 (537 SE2d 42) (2000) (citation and punctuation omitted; emphasis in original).

[5] Id. (citation and punctuation omitted).

8

*prematurely* filed and this prematurity will not serve to deprive the appellate court of jurisdiction to review the merits of the appeal. Consequently, the order denying the motion, as amended, . . . was timely appealed.[6]

2. Deleon-Alvarez challenges his conviction on general grounds, arguing that certain evidence was incompetent.

(a) Citing the Georgia Supreme Court's recent decision in *Luangkhot v. State*,[7] Deleon-Alvarez argues that the wiretapping was illegal and thus any evidence derived therefrom constitutes "fruit of the poisonous tree"[8] and cannot be used to support his conviction.

---

[6] *McClanahan v. State*, 196 Ga. App. 737 (1) (397 SE2d 24) (1990) (citations and punctuation omitted; emphasis in original), overruled on other grounds, *Wilson v. State*, 277 Ga. 195, 199 (2) (586 SE2d 669) (2003); see *Fairclough v. State*, 276 Ga. 602, 603 (1) (581 SE2d 3) (2003) (citing *McClanahan*, supra, in recognizing that a trial court's action may render "a prior, otherwise void motion for new trial, one which was only *prematurely* filed and this prematurity will not serve to deprive the appellate court of jurisdiction to review the merits of the appeal") (citation and punctuation omitted; emphasis in original).

[7] 292 Ga. 423 (736 SE2d 397) (2013) (concluding that Georgia's wiretap statute did not authorize superior courts to issue wiretap warrants for interceptions conducted outside the boundaries of their respective judicial circuits).

[8] See generally *Jordan v. State*, 211 Ga. App. 86, 91 (1) (c) (438 SE2d 371) (1993) (acknowledging that "the genesis of the 'poisonous tree' concept is a violation of the Fourth Amendment").

9

Deleon-Alvarez did not seek suppression before the trial court, and consequently waived this issue.[9] Furthermore, his contention is unavailing because he lacked the requisite standing to challenge the wiretapping as unlawful.

> [S]uppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. The exclusionary rule is to protect those whose Fourth Amendment rights have been violated.[10]

---

[9] See *Romano v. State*, 162 Ga. App. 816, 818 (1) (a) (292 SE2d 533) (1982) (holding that, where defendant did not seek to exclude evidence on the ground that it stemmed from a warrant that lacked statutory authority needed for wiretap, issue of whether "wiretaps and information obtained therefrom were 'fruits of the poisonous tree' and inadmissible" would not be considered for the first time on appeal); see also *Owens v. State*, 308 Ga. App. 374, 380 (3) (707 SE2d 584) (2011) (determining that defendant's failure to elicit ruling on suppression issue by trial court amounted to abandonment of issue).

[10] *Ellis v. State*, 256 Ga. 751, 755 (2) (353 SE2d 19) (1987) (citations and punctuation omitted) (applying Fourth Amendment search principles to analyze whether defendant had standing to challenge the electronic surveillance of a co-defendant's telephone).

Moreover, "[t]he only authority for a motion to suppress is [OCGA § 17-5-30], and under the provisions of that statute a pretrial motion to suppress is available only to the person aggrieved by an unlawful search and seizure."[11]

Deleon-Alvarez makes no assertion that his Fourth Amendment rights were violated. Rather, he acknowledges in his appellate brief that the evidence showed that he was *not* a subscriber of the phones tapped and that his voice was *not* heard during any conversation of the phones tapped. As Deleon-Alvarez puts it, "Appellant could not move to suppress the wiretap since the phone was not his." Because there was no evidence that Deleon-Alvarez was a subscriber of the phones tapped and no evidence that his voice was heard during the wiretapped conversations, he lacked standing to seek suppression of the conversations at issue (and thus any alleged fruit of the poisonous tree) on the ground raised here.[12]

---

[11] *Romano*, supra at 819 (1) (a) (citation omitted); see *Burgeson v. State*, 267 Ga. 102, 106 (3) (d) (475 SE2d 581) (1996) ("The focus of our state statutes [regulating eavesdropping, surveillance, or the interception of communication, OCGA § 16-11-62 through 16-11-67] is to protect persons from invasions of *their* privacy.") (emphasis supplied).

[12] See *Ellis*, supra (determining that defendant had no standing to challenge, under Georgia statutory law, the electronic surveillance of the telephone of his co-defendant, explaining that "[w]hen the voice of an individual is not heard and the tap is not on his premises, he has no standing"); *Rogers v. State*, 182 Ga. App. 599, 600 (3) (356 SE2d 546) (1987) (concluding that trial court correctly denied appellant's

(b) Deleon-Alvarez argues that the evidence stemming from the traffic stop of the Expedition (in which he and Tejada were passengers) was inadmissible, maintaining that the evidence constituted fruit of the poisonous tree (the wiretapping) and asserting that the warrantless stop was unconstitutional. This contention is without merit. Deleon-Alvarez's assertion that the evidence constituted fruit of the poisonous tree is unavailing to him,[13] and his assertion that the warrantless traffic stop was unconstitutional is belied by the record.

> [A] law enforcement officer may conduct a constitutional investigatory stop of an individual when the officer is able to point to specific and articulable facts which, when taken together with rational inferences from those facts, reasonably warrant that intrusion. That is, under the totality of the circumstances, the investigatory stop must be

motion to suppress the results of electronic surveillance by means of a wiretap on the telephone of a co-defendant, explaining that "[s]ince the wiretap was on [co-defendant's] telephone, appellant had no standing to object to an alleged violation of [co-defendant's] Fourth Amendment rights" and that "[s]ince none of appellant's Fourth Amendment rights were violated by the wiretap of [his co-defendant's] telephone, appellant was not an aggrieved person," was not entitled to the protection of the exclusionary rule, and thus had no standing to object to the wiretap of co-defendant's telephone); see generally *Jordan*, supra (noting that "the exclusionary rule . . . never applies in the absence of a Fourth Amendment violation").

[13] See Division 2 (a), supra.

12

justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.[14]

Trial evidence showed that, based on telephone surveillance, the police had discerned that an abducted individual was being held against his will at a particular residence in Floyd County. A warrant had been issued to search that residence. Police had maintained direct observation of the residence and had seen persons exiting the house and leaving in vehicles, including the Expedition, which police then followed at close range prior to effecting the stop. Those circumstances provided a lawful basis for the traffic stop of the Expedition.[15]

(c) Deleon-Alvarez argues that the victim of the kidnapping crime, Tejada, was an accomplice in drug trafficking, and that therefore his felony conviction rested

---

[14] *Garmon v. State*, 271 Ga. 673, 676 (2) (524 SE2d 211) (1999) (citations and punctuation omitted).

[15] See id. at 677-678 (2) (determining that police were justified in conducting stop of vehicle after it left a residence at which it had been determined there was probable cause that it was then the location of controlled substances and the site of illegal activity, the nature of some of the illegal activity made it reasonable to conclude that there would be contraband in the vehicle leaving the residence, and which stop was conducted within 20 minutes of police monitoring wiretap of telephone at residence and overhearing discussion of illegal activity).

13

solely on the uncorroborated testimony of an accomplice in violation of then-applicable OCGA § 24-4-8.[16]

In light of that Code section, "the testimony of an accomplice used to convict the [defendant] of a crime must be supported by independent corroborating evidence as to the identity and participation of the [defendant] tending to connect him to the crime."[17] "The corroborating evidence need not be sufficient by itself to convict [a defendant], nor does the testimony of an accomplice need to be corroborated in every detail."[18] Rather, slight evidence of corroboration connecting the defendant with the crime satisfies the requirements of OCGA § 24-4-8 and that evidence may be entirely

---

[16] When Deleon-Alvarez's trial was conducted in April 2011, OCGA § 24-4-8 (2011) pertinently provided, "The testimony of a single witness is generally sufficient to establish a fact. However, in . . . felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness."

[17] *Ladson v. State*, 248 Ga. 470, 475 (5) (285 SE2d 508) (1981) (citations and punctuation omitted).

[18] *Terrell v. State*, 271 Ga. 783, 786 (3) (523 SE2d 294) (1999) (citations omitted).

circumstantial.[19] Also, evidence of the defendant's conduct before and after the crime may give rise to an inference that he participated in the crime.[20]

Pretermitting whether Tejada could have been considered an accomplice of Deleon-Alvarez for purposes of OCGA § 24-4-8,[21] Deleon-Alvarez's conviction plainly did not rest solely on Tejada's testimony. Evidence sufficiently corroborating Tejada's testimony that Deleon-Alvarez, along with the three co-defendants, kidnapped him for ransom included the following. The proprietor of a business located in the same strip mall as Tejada's clothing store saw Tejada being forcibly taken away. That evening, on conversations monitored from Palacios-Baras's telephones, Tejada was overheard pleading for his life; Tejada was also overheard asking his family for $84,000. Later that night, police observed a white Expedition parked at the Floyd County residence they had under surveillance. And when police observed that vehicle depart that residence, they stopped it; Deleon-Alvarez was

[19] *Hinely v. State*, 275 Ga. 777, 779 (1) (573 SE2d 66) (2002).

[20] Id.

[21] See generally *Johnson v. State*, 288 Ga. 803, 806 (3) (708 SE2d 331) (2011) (reiterating that it is "not error to submit to the jury the question of whether a witness for the state was or was not an accomplice even where the witness has confessed to being an accomplice and has been jointly indicted with the defendant on trial") (citation and punctuation omitted).

15

found in the back seat, along with Tejada and a hidden gun. An officer testified that Tejada had "grayish-whiteish" glue on his wrists and immediately said that his life had been threatened. An ensuing search of the Floyd County residence yielded, inter alia, discarded duct tape. Giving the foregoing, there is no merit in Deleon-Alvarez's contention that he was convicted in violation of OCGA § 24-4-8.

(d) Contrary to Deleon-Alvarez's contention, the evidence adduced against him was sufficient to sustain his conviction of kidnapping for ransom.[22]

3. After the time for filing a brief and enumeration of errors had passed, Deleon-Alvarez filed a supplemental brief,[23] contending that "[t]he trial court erred in admitting evidence from a void wiretap warrant and the evidence based upon the wiretap evidence." Deleon-Alvarez cites the Georgia Supreme Court's decision in *Luangkhot*.[24]

---

[22] See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[23] See Court of Appeals Rule 27.

[24] Supra.

Deleon-Alvarez did not contend in his enumeration of errors that the trial court so erred. Pretermitting whether this contention was timely presented to this court,[25] it is unavailing. Deleon-Alvarez neither filed a motion to suppress such evidence before the trial court, nor did he have standing to raise the Fourth Amendment issue.[26] Consequently, this contention provides no basis for reversing the judgment of conviction entered against Deleon-Alvarez.[27]

4. Deleon-Alvarez has filed a motion to remand this case for a hearing "to determine if the appellant has standing or if trial counsel was ineffective for failing to move for suppression of the wiretaps."[28] Deleon-Alvarez cites the Georgia

---

[25] See *Campbell v. State*, 253 Ga. App. 325, 326 (3) (558 SE2d 857) (2002) ("Attempts in a supplemental brief to expand the issues beyond the scope of the enumeration of errors are improper.") (punctuation and footnote omitted); see also *Potter v. State*, 283 Ga. 576, 578 (3), n. 5 (662 SE2d 128) (2008) (explaining that, while pursuant to its rule, an appellate court may accept supplemental briefs on issues timely presented, such rule does not provide a mechanism by which a party may circumvent the requirement to timely submit an enumeration of errors); *Stokes v. State*, 281 Ga. 825, 828 (2) (b), n. 4 (642 SE2d 82) (2007) ("[A] supplemental brief is not the vehicle for raising a new issue of law.").

[26] See Division 2 (a), supra.

[27] See *Owens*, supra; *Romano*, supra.

[28] Deleon-Alvarez filed this motion through counsel obtained after he was convicted.

Supreme Court's decision in *Luangkhot*,[29] and points out that his motion for new trial was denied prior to that decision. In light of Division 2 (a),[30] however, the motion is denied.[31]

*Case No. A13A1001 - Appeal of Palacios-Baras*

5. As was the situation in Deleon-Alvarez's case,[32] Palacios-Baras's motion for new trial was filed before the trial court entered the judgment of conviction in his case. Notwithstanding, the subsequent entry of the judgment rendered the motion "only *prematurely* filed, and this prematurity will not serve to deprive the appellate court of jurisdiction to review the merits of the appeal. Consequently, the order denying the motion, as amended, . . . was timely appealed."[33]

---

[29] Supra.

[30] Supra (holding that Deleon-Alvarez lacked standing to seek suppression on the ground that the wiretapping was unlawful).

[31] See *Chapman v. State*, 290 Ga. 631, 634 (2) (b), n. 2 (724 SE2d 391) (2012) ("The failure to pursue a futile motion does not constitute ineffective assistance."); see also *Lewis v. State*, 291 Ga. 273, 282 (7) (731 SE2d 51) (2012) (reiterating that a remand to the trial court for an evidentiary hearing on an ineffectiveness claim is not necessary where "we can determine from the record that the two prong test for ineffectiveness cannot be met") (citation and punctuation omitted).

[32] See Division 1, supra.

[33] *McClanahan*, supra (emphasis in original); see *Fairclough*, supra.

18

6. Palacios-Baras contends that his Sixth Amendment right to confrontation was violated when the trial court sustained objections to his cross-examination of Tejada about a deal Tejada made with the state.

The record shows that Tejada testified at the trial under a grant of testimonial immunity.[34] Accordingly, near the end of the state's direct examination of Tejada, the jury was apprised as follows:

> Q: Mr. Tejada, you understand that you were testifying under a grant of testimonial immunity, correct?
> A: Yes.
> Q: And you understand – do you understand what that means?
> A: Yes.
> Q: Do you understand that that means anything you say cannot be used against you? Anything you testify to cannot be used against you in a future prosecution.
> A: Yes.

---

[34] The trial court entered an order that provided, "The Court having considered the State's motion to grant testimonial immunity to Jose Wilson Tejada, it is hereby ordered that the State's motion is GRANTED. . . . [N]o evidence derived directly or indirectly from his testimony during the [underlying trial] may be used against him in any proceeding or prosecution." See OCGA § 24-9-28 (a) (2011) (providing, in relevant part, that "no testimony or other evidence . . . may be used against the person in any proceedings or prosecution for a crime or offense concerning which he testified or produced evidence under court order."

Hence, Palacios-Baras sought to show on cross-examination that Tejada was thereby biased:

> Q: And you have never been in – and you have never been indicted for the crime of conspiracy to traffic in cocaine; is that correct?
> A: Yes.
> . . .
> Q: Did you conspire to put together a three-kilo cocaine deal . . .?
> A: Yes.
> . . .
> Q: Okay. So you are here, today, to testify without having ever been charged, is basically what I'm getting at. And you have been granted a complete immunity to testify here today.
> A: Yes.
> Q: And you know that by testifying here today, you do not have to do one minute in prison for anything that you've done in the past, correct?

The prosecutor interjected, "Judge, I object. That's a gross misstatement of what testimonial immunity is, Judge." The trial court agreed, responding further with an instruction to the jury explaining:

> Testimonial immunity means you cannot be prosecuted for what you say in court or any – directly or indirectly. In other words, the evidence that you give in court cannot turn around and then be admitted against you and used against you, should you be charged with a crime, based upon the things that you admit in court. It differs from transactional immunity,

20

which means you cannot be prosecuted for the transaction at all, any time.[35]

Thereupon, Palacios-Baras's cross-examination of Tejada resumed:

Q: And you have agreed to testify against these men with immunity and you know that you did this to avoid being prosecuted; is that correct?
A: Yes.
Q: And you know that the penalty is 25 years in prison for trafficking in cocaine and (sic) that amount, so you'll never have to do that.

Again, the prosecutor objected, which objection the court sustained. Further, the court remarked to defense counsel, "You're misleading the jury on two different occasions . . . and you know what these terms mean." The court then gave instructions, first to the jury, then to defense counsel, "I'm instructing the jury to disregard the inaccurate statements that counsel has made – – and instruct you not to make those statements again, sir. If you do that again, then we're going to have to

---

[35] See *Corson v. Hames*, 239 Ga. 534 (1) (238 SE2d 75) (1977) (holding that [OCGA § 24-9-28] "does not authorize a grant of transaction immunity, i.e., immunity from prosecution"); *In re Long*, 276 Ga. App. 306, 307 (623 SE2d 181) (2005) (distinguishing "transactional immunity" from "testimonial immunity," and interpreting OCGA § 24-9-28 (a) as providing for the latter in that it "prohibits the State from using compelled testimony or evidence derived from that testimony given under an immunity grant, but would allow the State to prosecute the witness using evidence gathered elsewhere").

deal with that, sir." Defense counsel responded, "Thank you, Your Honor. Nothing further."

On appeal, Palacios-Baras relies on *State v. Vogelson*[36] to assert that the trial court abused its discretion "when it sustained the State's objection and refused to allow Appellant to cross-examine the named victim as to the potential sentence he avoided by cooperating with and testifying for the State." In *Vogelson*, the Supreme Court of Georgia noted that "the Sixth Amendment guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him"[37] and held that "the trial court abuses its discretion and commits error when it cuts off all inquiry on a subject on which the defense is entitled to reasonable cross-examination."[38] As *Vogelson* recognized, "Defense counsel is entitled to a reasonable cross-examination on the relevant issue of whether the witness entertained any belief of personal benefit from testifying favorably for the prosecution."[39] But *Vogelson* went on to explain,

---

[36] 275 Ga. 637 (571 SE2d 752) (2002).

[37] Id. at 638 (1) (citation and punctuation omitted).

[38] Id. at 640 (1) (citations omitted).

[39] Id. at 639 (1) (citations omitted).

That is not to say, however, that the Confrontation Clause of the Sixth Amendment prohibits the imposition of any limits on the cross-examiner's inquiry into the potential bias of an adverse witness. . . . [T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.[40]

Here, the trial court was authorized to determine that, as phrased, the questions that drew objections tended to confuse issues relating to the specific type of immunity extended to Tejada.[41] In sustaining those objections, the trial court articulated that concern, issued curative instructions to the jury, and admonished defense counsel not to ask questions that misrepresented applicable law and circumstances. These actions taken by the court did not impose unreasonable limits on Palacios-Baras's cross-examination of Tejada, nor did the actions cut off all inquiry into the subject of Tejada's testimonial immunity.[42] Instead, as the record reveals, Palacios-Baras's

_____

[40] Id. (citations and punctuation omitted); see *Younger v. State*, 288 Ga. 195, 199 (3) (702 SE2d 183) (2010).

[41] See *Corson*, supra; *In re Long*, supra.

[42] See generally *Young v. State*, 290 Ga. 441, 444 (5) (721 SE2d 839) (2012) ("The Confrontation Clause guarantees only an *opportunity* for effective

23

counsel thereafter chose not to ask Tejada any additional question(s) that might have exposed to the jury Tejada's belief concerning "whether the deal [he] struck with the State was sufficiently lucrative to render [his] testimony less creditworthy."[43] Given the foregoing, the trial court did not abuse its discretion.[44]

7. Palacios-Baras contends that the trial court erred by rejecting his claim of ineffective assistance of counsel.

---

cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.") (citation omitted; emphasis in original).

[43] *Vogelson*, supra at 638, n. 3, quoting *Perez v. State*, 254 Ga. App. 872, 876 (564 SE2d 208) (2002) (Ruffin, J., concurring specially).

[44] See *Hodo v. State*, 272 Ga. 272, 274-275 (4) (528 SE2d 250) (2000) (finding no abuse of discretion, where defendant was allowed to amply explore the state's witness's potential for bias, and where defendant asked witness whether he realized that he could be prosecuted and asked witness about any benefit he expected to receive in exchange for his testimony; reasoning that the "mere fact that [defendant] was unable to ask [the witness] to conjecture about possible punishment did not diminish [defendant's] attempt to show [witness's] motive for testifying on behalf of the State"). Cf. *Vogelson*, supra at 640 (1) (finding abuse of discretion, where the trial court refused to permit defense counsel to question a witness who was testifying for the state in exchange for a reduction in prison time about the witness's belief concerning the amount of prison time he was avoiding by testifying against the defendant, and where the trial court informed defense counsel, "We don't talk about mandatory sentences. We don't talk about any of that stuff[,]" and then admonished counsel for ignoring the court's directive when counsel asked the witness, without referring to "mandatory sentences," about how much prison time the witness was saving himself by cooperating with the state and testifying against defendant).

In order to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[45] [a defendant] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. On appeal, this [c]ourt accepts the trial court's findings of fact, unless they are clearly erroneous. However, the trial court's legal conclusions are reviewed de novo.[46]

Palacios-Baras complains that his trial lawyer did not file a motion to suppress evidence derived from the wiretapping, asserting that such "evidence was plainly illegal pursuant to our Supreme Court's holding in *Luangkhot*."[47] In that case, the Court interpreted the Georgia wiretap statute[48] and held that "superior courts do not currently possess the authority to issue wiretap warrants for interceptions conducted outside the boundaries of their respective judicial circuits."[49] The Court expounded:

[I]n the absence of any state statute expressly granting superior courts the authority to issue wiretap warrants that apply outside their own

---

[45] 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[46] *Hill v. State*, 290 Ga. 493, 499 (7) (722 SE2d 708) (2012) (citations and punctuation omitted).

[47] Supra.

[48] Id. at 424-425 (1), citing OCGA § 16-11-64 (c) (2011).

[49] Id. at 423.

25

judicial circuits, we hold that current state law vests the authority to issue wiretap warrants only in those superior courts of the judicial circuits in which the tapped phones or listening post are located.[50]

Palacios-Baras contends that, under that holding, the Gwinnett County Superior Court lacked the authority to issue the wiretap warrant for the interceptions at issue here,[51] which, according to the evidence presented, took place exclusively in the HIDTA "wiretap facility" located in Atlanta. The state concedes that "the wiretap facility where the calls were intercepted was not in Gwinnett County."

Palacios-Baras's contention demonstrates no error, however, in the trial court's rejection of his *ineffectiveness* claim. After Palacios-Baras was convicted, he was

---

[50] Id. at 428 (4). The Supreme Court decided *Luangkhot* on January 7, 2013 (denying motion for reconsideration on February 18, 2013). Thereafter, the General Assembly amended OCGA § 16-11-64 (c), effective February 13, 2013, so as to provide: "Upon written application, under oath, of the district attorney having jurisdiction over prosecution of the crime under investigation or the Attorney General made before a judge of superior court having jurisdiction over the crime under investigation, such court may issue an investigation warrant permitting the use of a device for the surveillance of a person or place to the extent the same is consistent with and subject to the terms, conditions, and procedures provided for by 18 U.S.C. Chapter 119. *Such warrant shall have state-wide application and interception of communications shall be permitted in any location in this state.*" (Emphasis supplied.) See Ga. L. 2013, p. 4 § 1.

[51] See OCGA § 15-6-1 (20) (providing that Gwinnett Judicial Circuit is composed of the County of Gwinnett).

26

appointed new counsel who, as Palacios-Baras concedes on appeal, did not include on motion for new trial an allegation that trial counsel was effective for failing to challenge the propriety of the underlying warrant. "Because appellant's allegation of ineffective assistance based on [such failure] was not raised on motion for new trial by appellate counsel who had been appointed following appellant's conviction, it is waived."[52]

Even had Palacios-Baras's post-conviction counsel alleged that trial counsel was ineffective for failing to file a motion to suppress evidence on the ground of an unauthorized warrant, the trial court would have been bound to reject it under this court's 2012 decision in *Luangkhot v. State*.[53] Although that decision was overturned in 2013 by the Georgia Supreme Court, at the 2011 joint trial, Palacios-Baras's "trial

---

[52] *Allen v. State*, 286 Ga. 392, 399 (5) (b) (687 SE2d 799) (2010) (citation omitted); *Lynch v. State*, 280 Ga. 887, 890 (3) (635 SE2d 140) (2006) ("Contentions of ineffectiveness not raised on motion for new trial by counsel appointed after conviction are waived.") (citation and punctuation omitted).

[53] 313 Ga. App. 599 (722 SE2d 193) (2012), overruled, *Luangkhot*, supra, 292 Ga. 423. The Court of Appeals' decision was rendered on January 18, 2012. In the instant case, Palacios-Baras's trial counsel filed a motion for new trial, then post-conviction counsel filed an amendment thereto on February 28, 2012 to allege ineffectiveness of trial counsel. After a hearing thereon, the trial court entered the denial of the (amended) motion on December 14, 2012.

counsel was not ineffective for failing to predict [the 2013 decision]."[54] "Because there was no basis for [a motion to suppress the evidence pursuant to the Supreme Court's decision in *Luangkhot*]," [Palacios-Baras's] trial counsel did not perform deficiently in failing to pursue such a motion.[55]

Indeed, Palacios-Baras's claim that "[certain] evidence was plainly illegal pursuant to our Supreme Court's holding in *Luangkhot*" is, on its face, the product of hindsight, which has "no place in an assessment of the performance of trial counsel."[56]

> Hindsight, whether by a court, the defendant, or defendant's counsel, is
> a legally insufficient basis for concluding that counsel's performance at

---

[54] *Hill*, supra (citation and punctuation omitted); see *Rickman v. State*, 277 Ga. 277, 280 (2) (587 SE2d 596) (2003) (noting that "in making litigation decisions, there is no general duty on the part of defense counsel to anticipate changes in the law, and that only in a rare case would it be ineffective assistance by a trial attorney not to make an objection that would be overruled under prevailing law") (punctuation and footnotes omitted).

[55] *Hill*, supra at 499-500 (7) (rejecting claim that trial counsel performed deficiently by failing to request a certain jury instruction, noting that at the time of trial, there was no basis for requesting it); see *Chapman*, supra.

[56] *Jones v. State*, 292 Ga. 593, 600 (7) (d) (740 SE2d 147) (2013); *Green v. State*, 249 Ga. App. 546, 554 (4) (547 SE2d 569) (2001) (determining that trial counsel's decision whether to file a suppression motion will not be judged in hindsight).

trial was deficient. As the United States Supreme Court has explained, a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.[57]

"There is a rebuttable presumption that counsel exercised reasonable professional judgment."[58] "The decision of whether to file a motion to suppress is a matter of professional judgment,"[59] and thus "will not form the basis for an ineffective assistance of counsel claim unless it was so patently unreasonable that no competent attorney would have chosen it."[60] Notably, Palacios-Baras has made neither argument

---

[57] *Wright v. State*, 285 Ga. 428, 435 (6) (677 SE2d 82) (2009) (citation omitted); see *Strickland*, supra at 689-690 (III) (A).

[58] *Schofield v. Gulley*, 279 Ga. 413 (I) (614 SE2d 740) (2005) (citation omitted).

[59] *Green*, supra; see *Brown v. State*, 288 Ga. 902, 909 (5) (708 SE2d 294) (2011) ("There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect.") (citation and punctuation omitted).

[60] *Brown*, supra (citation and punctuation omitted).

nor assertion that trial counsel's failure to seek suppression of the evidence fell within that realm. And all things considered, we conclude that it did not.[61]

8. Palacios-Baras has filed a motion to remand this case "for a hearing on trial counsel's effectiveness consistent with our Supreme Court's holding in *Luangkhot*." Palacios-Baras explains that "[he] did not raise said ineffectiveness in the trial court because *Luangkhot* was decided after [his] motion for new trial was denied." Given our holding in Division 7,[62] said motion is denied.[63] The cases cited by Palacios-

---

[61] See *Jones*, supra; *Brown*, supra; *McClure v. Kemp*, 285 Ga. 801, 802-803 (684 SE2d 255) (2009); *Green*, supra.

[62] Supra.

[63] See generally *Billings v. State*, 293 Ga. 99, 102-103 (2) (745 SE2d 583) (2013) (denying appellant's motion to remand case to trial court for a second ineffectiveness hearing, despite appellant's assertion that he had discovered "additional evidence . . . that could provide additional grounds for a claim of ineffective assistance of trial counsel"; a defendant must raise all allegations of ineffectiveness at the earliest practicable moment, and any allegation not raised is deemed waived); *Lewis*, supra.

Baras, *Gregory v. State*[64] and *Wilson v. State*,[65] turned on circumstances inapposite to those here and thus provide no support for his argument that he is entitled to a remand to allege ineffective assistance of trial counsel in light of the Supreme Court's holding in *Luangkhot*.

---

[64] 277 Ga. App. 664, 669 (5) (627 SE2d 79) (2006) (remanding case, where appellant raised on appeal allegations of ineffective assistance "which [could] not be resolved by the present record," and where appellant's appellate counsel "could not have amended the motion [for new trial to raise ineffectiveness claim] since he was not appointed until after the trial court had ruled on" the motion).

[65] 318 Ga. App. 37, 39 (733 SE2d 345) (2012) (retroactively applying then-recent case law, *Garza v. State*, 284 Ga. 696 (670 SE2d 73) (2008), to analyze whether the evidence was sufficient to support kidnapping conviction). Compare, however, *Chatman v. Brown*, 291 Ga. 785-786, n. 1 (733 SE2d 712) (2012) (explaining that "because the rule created in *Garza* constituted a substantive change in the law with respect to the elements required to prove the crime of kidnapping at the time that the case was decided, the rule became retroactively applicable" to certain cases), with *McClure*, supra at 802 (explaining that application of the pipeline rule so as to analyze a claim of error under a *new procedural rule* "is dependent upon whether the claim was preserved for appellate review," and thus concluding that, because appellant failed to file a motion to suppress evidence, pipeline rule did not apply so as to invoke recent case law relating to the evidentiary issue). See also OCGA § 5-6-36 (a) (pertinently providing, "The entry of judgment on a verdict by the trial court constitutes an adjudication by the trial court as to the sufficiency of the evidence to sustain the verdict, affording a basis for review on appeal without further ruling by the trial court."), cited in *Jeffries v. State*, 272 Ga. 510, 513 (5), n. 9 (530 SE2d 714) (2000).

9. Hernandez contends that the trial court erred by rejecting his claim of ineffective assistance of trial counsel, asserting that his trial counsel was "ineffective for not making use of available evidence to show that the evidence supported conclusions other than that Appellant was party to the crime of kidnapping for ransom."

In particular, Hernandez claims that the trial evidence did not "conclusively establish that only four people participated in the criminal enterprise"; that the evidence did not "foreclose someone other than [Appellant as] the driver of the Camry from Gwinnett County to Floyd County"; and that his lawyer did not "offer an explanation for Appellant's presence at the scene of the crime." Hernandez posits that his trial lawyer might have advanced theories that his involvement was limited to the Camry – as a prospective buyer of that vehicle, or alternatively, as one serving only to dispose of that vehicle.

Hernandez showed on motion for new trial that, prior to trial, the state provided the defense recordings of numerous intercepted telephone conversations concerning the sales of various vehicles. Hernandez thus posited on motion for new trial that his trial lawyer should have used those conversations to support a defense theory that he

32

was at the Floyd County residence solely to purchase or otherwise dispose of the Camry. On appeal, Hernandez argues that "disposing of the Camry would make Appellant an accessory after the fact. One cannot be guilty both as a principal involved in the crime and as an accessory after the fact."

But as Hernandez acknowledges in his appellate brief, none of the conversations that he cited on motion for new trial concerned the Camry. And none of the conversations concerned a vehicle transaction involving Hernandez.

Hernandez did not testify at the hearing on motion for new trial, but he called his trial lawyer to the stand. She recounted that, before and after receiving discovery from the state, she consulted with Hernandez to develop a defense strategy. He had claimed to her that he had not been at the Gwinnett County residence and that he had gone to the Floyd County residence only to give "[a particular individual] a ride home. So that was basically his involvement." The lawyer testified that she thus asked Hernandez why [that individual] was not in the Camry when it was stopped by police, but "I didn't get an answer." Also, the lawyer recalled at the motion for new trial hearing that Hernandez had initially told her that the Camry belonged to his friend; thereafter, he mentioned to her that he was at the Floyd County residence to buy the

33

Camry, "but then when I said, well you told me it was your friend's, he didn't really pursue that."

Even assuming arguendo that alternate strategies were available for Hernandez's defense, "[i]t cannot be said that counsel was ineffective simply because another attorney might have placed more or a different emphasis on the evidence."[66] Hernandez's defense at trial was that the state's evidence fell short of proving beyond a reasonable doubt that he was guilty. To that end, Hernandez's lawyer asserted during opening statement that the state's case would lack evidence – for example, that Hernandez was at the parking lot of Tejada's store when he was abducted, that he participated in any of the intercepted phone conversations, and that he was found with a firearm when stopped by police in the Camry. Accordingly, defense counsel's cross-examination of the state's witnesses elicited testimony to show these and other arguable evidentiary weaknesses and inconsistencies. And during closing argument, Hernandez's lawyer argued that the state had "tried to paint with a very broad brush

---

[66] *Jones v. State*, 282 Ga. 306, 308 (6) (647 SE2d 576) (2007) (citation omitted); see *Harris v. State*, 280 Ga. 372, 375 (3) (627 SE2d 562) (2006) (although with hindsight counsel could have taken a different approach to witness credibility, the approach he took fell within the wide range of reasonable professional conduct).

so that some of the paint gets on every defendant," but evidentiary weaknesses and inconsistencies as to Hernandez rendered a guilty verdict unsustainable.

We reject Hernandez's claim that this trial "strategy was unreasonable to the extent that no competent attorney would have chosen it on Appellant's behalf."[67] "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."[68]

> While other counsel, had they represented appellant, may have exercised different judgment, the fact that the trial counsel chose to try the case in the manner in which it was tried and made certain difficult decisions regarding the defense tactics to be employed with which appellant and his present counsel now disagree, does not require a finding that the representation below was so inadequate as to amount to a denial of effective assistance of counsel.[69]

---

[67] See *Ingram v. State*, 317 Ga. App. 606, 608 (2) (732 SE2d 456) (2012) ("[S]trategic decisions provide no grounds for reversal unless such tactical decisions are so patently unreasonable that no competent attorney would have chosen them.") (citation and punctuation omitted).

[68] *Strickland*, supra at 689 (III) (A) (citation omitted).

[69] *Van Alstine v. State*, 263 Ga. 1, 4-5 (426 SE2d 360) (1993) (citation omitted); see *Hall v. Terrell*, 285 Ga. 448, 455 (II) (E) (679 SE2d 17) (2009) ("There can be more than one reasonable strategy for a defense.")

35

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting to a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.[70]

Because Hernandez's trial lawyer, after reviewing the evidence and consulting with Hernandez, made a reasonable decision to pursue an all-or-nothing defense strategy, the trial court did not err in rejecting the claim of ineffective assistance of trial counsel.[71]

10. With new counsel on appeal, Hernandez asserts that counsel who represented him on motion for new trial was ineffective for failing to allege that his trial counsel was ineffective for failing to move to suppress the evidence obtained by investigators though the wiretapping. Hernandez cites the Georgia Supreme Court's

---

[70] *Strickland*, supra (citation omitted).

[71] See *Jones*, 282 Ga. at 308 (6) (concluding that defense counsel did not render ineffective assistance at trial by not eliciting certain evidence and by not bringing out certain facts in closing argument, even though defendant argued that such evidence would have bolstered his defense; counsel established through cross-examination of state's witness that there was no physical evidence to corroborate the state's version of events and, during closing argument, emphasized the absence of such evidence); *Ingram*, supra (concluding that ineffectiveness claim was properly rejected, where trial counsel made reasonable decision to pursue an all-or-nothing defense strategy based upon his review of the evidence).

decision in *Luangkhot*. Pretermitting whether this claim is properly before us,[72] we find that it lacks merit.

At trial, Hernandez's lawyer elicited testimony from prosecution witnesses that Hernandez was never identified as an owner or subscriber of the three targeted cellphones monitored, nor was he ever identified as a participant of the intercepted conversations. And on appeal, Hernandez makes no assertion that there was evidence that he had standing to pursue suppression of such evidence. We therefore conclude that Hernandez lacked standing to pursue suppression of the evidence,[73] and that neither his trial counsel nor counsel on motion for new trial performed deficiently for failing to raise the suppression issue.[74]

11. After the time for filing a brief and enumeration of errors had passed, Hernandez filed a supplemental brief, contending that "[t]he trial court erred in admitting evidence from a void wiretap warrant and the evidence based upon the

---

[72] See *Lewis*, supra (reiterating that "a defendant cannot resuscitate procedurally barred claims of ineffective assistance of trial counsel simply by bootstrapping them to a claim of ineffectiveness of appellate counsel").

[73] See *Ellis*, supra; *Rogers*, supra; see also *Jordan*, supra.

[74] See *Chapman*, supra.

wiretap evidence." Hernandez cites the Georgia Supreme Court's decision in *Luangkhot*.[75]

Hernandez did not claim in his enumeration of errors that the trial court so erred. Pretermitting whether this contention was timely presented to this court,[76] it is unavailing. As Hernandez acknowledges, he did not file a motion to suppress such evidence before the trial court.[77] This contention, therefore, provides no basis for reversing the judgment of conviction entered against Hernandez.[78]

*Judgments affirmed. Ellington, P. J., and Branch, J., concur.*

---

[75] Supra.

[76] See *Campbell*, supra; see also *Potter*, supra; *Stokes*, supra.

[77] See Division 10, supra.

[78] See *Owens*, supra; *Romano*, supra.